MOTTONEN *v.* CALUMET & HECLA, INC.

1. WORKMEN'S COMPENSATION—MINING COMPANY EMPLOYEE—HEART ATTACK—EQUALLY DIVIDED COURT.

   Widow of mining company's employee who had been engaged in reducing the size of large chunks of copper ore and removing foreign material therefrom in defendant's rock house and who died of heart attack shortly after performing such arduous physical effort *held*, entitled to recover workmen's compensation, the court being equally divided as to whether defendant's liability therefor was limited to recovery under the occupational disease amendment of the workmen's compensation act (CLS 1956, § 412.1; CL 1948, § 417.1).

2. SAME—FINDING OF APPEAL BOARD—EVIDENCE.

   Finding of workmen's compensation appeal board that plaintiff widow's deceased, defendant mining company's employee, had "sustained a personal injury arising out of and in the course of his employment and due to causes and conditions characteristic of and peculiar to the business of the employer" *held*, sustained by evidence of medical and lay witnesses detailing the arduous physical effort of rock house employees and the effect upon the deceased (CL 1948, § 413.12).

Appeal from Workmen's Compensation Appeal Board. Submitted June 10, 1960. (Docket No. 48, Calendar No. 48,472.) Decided September 15, 1960.

Ellen Mottonen, widow of Raymond Mottonen, presented her claim for compensation from Calumet

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 255.
  3 Am Jur, Appeal and Error § 1160.
  Workmen's compensation: injury or death to which pre-existing heart disease of employee contributed.  19 ALR 110; 28 ALR 209; 60 ALR 1314.
[2] 58 Am Jur, Workmen's Compensation § 532.

& Hecla, Inc., because of death of husband from heart condition. Award to plaintiff. Defendant appeals. Affirmed.

*Wisti & Jaaskelainen* (*Gordon J. Jaaskelainen, of* counsel), for plaintiff.

*McLean & Sablich* (*Norman McLean,* of counsel), for defendant.

Edwards, J. This case represents the classic controversy posed by *Wieda* v. *American Box Board Co.,* 343 Mich 182, come full circle.

Raymond Mottonen died of a heart attack at the Calumet & Hecla's Iroquois mine at 39 years of age while doing his regular work in the regular way. Subsequent to his death his widow filed a claim for workmen's compensation which was denied by the referee August 6, 1958. His opinion made no reference to this Court's decisions in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, and *Coombe* v. *Penegor,* 348 Mich 635, decided June 10, 1957. Subsequently, relying on these cases, the workmen's compensation appeal board reversed the award of the referee and granted compensation, whereupon defendant appealed.

Both the referee and the defendant argue that this record shows no unusual strain or exertion, and hence that compensation may not be allowed.

The basic requirement for recovery of workmen's compensation by a claimant is proof of a disabling personal injury, or death, "arising out of and in the course of his employment." CLS 1956, § 412.1 (Stat Ann 1959 Cum Supp § 17.151).

The *Sheppard* and *Coombe Cases* served to eliminate from construction of the Michigan workmen's compensation statute the former case-law requirement of proof of an accident ("a fortuitous circum-

stance") (see *Arnold* v. *Ogle Construction Company,* 333 Mich 652) as a condition precedent to recovery of compensation where the statutorily-required proofs were present. *Coombe* also held that the fact of a pre-existing disease or injury did not bar compensation where the record showed that a disabling injury arose out of and during the course of employment without proof of accident or fortuitous event.

In both of these cases, the injured party was doing his or her regular work in the regular way but so doing occasioned disabling personal injury and compensation was granted. We read these cases as definitely rejecting the argument of the referee and the defendant herein that Mottonen's widow may not, as a matter of law, recover compensation absent proof of "unusual strain."

We see no occasion to repeat the lengthy arguments by which these conclusions were reached, which are fully recorded in the majority and dissenting opinions in *Wieda, supra,* and the several opinions in *Sheppard, supra,* and *Coombe, supra.*

We regard the question of the extent of strain or exertion imposed by his employment upon decedent in this case as related only to the question of whether or not his death arose out of his employment. His activities immediately prior to death formed the basis for the hypothetical question posed to medical witnesses. Hence, the record must be analyzed to determine whether or not there is any evidentiary support for the crucial findings of fact of the appeal board:

"The arduous physical effort of deceased in the rock house during a period of weeks immediately prior to April 10, 1957, was directly related to his death. Such physical effort precipitated the final heart attack which deceased suffered and caused his death."

.. It is clear from this record that Mottonen's work preceding his death was not unusual for him. It certainly would have been for millions of others.

.: Up to February, 1955, Mottonen worked at the Iroquois mine as an underground miner. On February 17, 1955, he experienced chest pains and consulted Dr. K. L. Repola. Examination and a cardiogram disclosed a coronary thrombosis, which condition Dr. Repola described as "moderate." Dr. Repola prescribed rest, and Mottonen stayed off work until September 1, 1955.

· When Mottonen returned to work, Dr. Repola warned him against strenuous activity. Thereafter, Mottonen worked at various jobs, including that of compressor man. Presumably none was as strenuous as underground mining.

· About a month before April 10, 1957, Mottonen was assigned to a job as "rock house man." The rock house was an elevated structure to which the ore was brought by dump carts, and where it was crushed and loaded.

The work of a rock house man required a daily climb of 40 to 50 feet to the rock house.

¨ His partner, Reino Koukkari, testified:

"*Q.* When you and him would climb up the stairs from the ground to the rock house 40 or 50 feet would he be exhausted when he got to the top?

"*A.* He was out of wind. It was a long climb for him.

"*Hearing Referee:*

"*Q.* Why did you say he was out of wind?

"*A.*. He was breathing heavy."

As to the job itself, Koukkari testified:

"*Q.* What are your duties as a rock house man?

"*A.* When I worked in the Iroquois?

"*Q.* Yes.

"*A.* My duties were that Ray operated the ropes and I did the barring and sledging and raking down.

"*Q.* Ray worked on both sides? He hooked from one side and you from the other?

"*A.* Yes.

"*Q.* His job required him to run the feeding pan?

"*A.* Yes.

"*Q.* Are there usually 2 men working in the rock house?

"*A.* Yes.

"*Q.* How do you get the large rocks from the pan into the crusher after you raise the pan?

"*A.* We bar them and scrape them out.

"*Q.* If some are too large?

"*A.* We take them out and drill them and break them up. * * *

"*Q.* When you have a large piece of copper mass caught in the crusher how do you get that out?

"*A.* Well, we clean out the crusher first and put the chain block on and put the crusher on.

"*Hearing Referee:* How do you clean the crusher, by hand? Do you shovel it out?

"*A.* Sometimes, yes, if it is muddy."

To break up the larger chunks of ore, a rock house man used a bar, a sledge hammer, and a jackhammer.

Koukkari apparently felt that Mottonen could not perform the job fully, and that Mottonen's employment in the rock house required him (Koukkari) to take the heaviest load. He testified, however, that Mottonen performed all the tasks outlined above.

Henry Snapp, a miner and vice president of the Iroquois local union, testified that he had notified the mine captain that the rock house work was too strenuous for Mottonen in view of his heart condition. He was told there was no easier job for Mottonen.

While working the night shift of April 9, 1957, on his regular job in the rock house at the mine, Mottonen complained of pains in his chest. He rested several times but completed his shift and went to the

"dry" room at the mine to change clothes where he died on the early morning of April 10th.

Answering a hypothetical question, for which we find ample support in this record, Mottonen's treating physician testified:

"*Q*. Do you have an opinion, Doctor?
"*A*. I think at the present state of our knowledge there is a causal relation between the coronary thrombosis and the amount of work this man did, assuming this situation.

"*Q*. Doctor, knowing that Reino* Mottonen had a pre-existing heart condition, a disease known as coronary thrombosis, and assuming the facts to be true that I previously stated as to his duties as a rock house man, which required strenuous physical exertion, in your opinion from a medical point of view is there a causal connection between the job described and a coronary thrombosis that resulted in his death on April 10, 1957?

"*A*. Once again, in the present state of our knowledge, I would say that is true that there is a causal connection between the amount of exertion and the coronary thrombosis."

We note, of course, that defendant emphasizes that Mottonen was a cigarette smoker, that he drank beer, and that he was somewhat overweight. We note that a medical witness testified that he did not believe his work had produced or aggravated the heart condition which caused his death.

What this portion of the record demonstrates, however, is a clear-cut dispute of fact as to whether or not Mottonen's death arose out of his employment. This, it was the statutory duty of the appeal board to resolve.

"The findings of fact made by the compensation commission acting within its powers, shall, in the

---

* It is stipulated in this case that "Reino" is the Finnish for "Raymond."—REPORTER.

absence of fraud, be conclusive." CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186).

The appeal board, in finding that "deceased sustained a personal injury arising out of and in the course of his employment and due to causes and conditions characteristic of and peculiar to the business of the employer," apparently gave somewhat greater weight to the testimony of the doctor who examined and treated Mottonen during his lifetime than to the defendant's expert witness who never saw him. It had every right to do so. *Wilson* v. *Doehler-Jarvis Division of National Lead Company,* 353 Mich 363, 372; *Redfern* v. *Sparks-Withington Co.,* 353 Mich 286, 301.

Affirmed. Costs to appellee.

Smith, Kavanagh, and Souris, JJ., concurred with Edwards, J.

Carr, J. (*concurring*). The question involved in this case is whether the plaintiff is entitled to dependency compensation under the provisions of the workmen's compensation act[*] of the State because of the death of her husband while an employee of the defendant. It is undisputed that said employee had worked for defendant for a number of years. In February, 1955, he developed a heart condition which disabled him for some months. With the approval of his physician he returned to work on or about September 1, 1955. Thereafter he was employed at various jobs that he apparently handled without noticeable difficulty.

A few weeks prior to April 10, 1957, Mottonen was assigned by defendant to the so-called rock house at the Iroquois mine. His duties there involved re-

---

[*] PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.,* as amended [Stat Ann 1950 Rev and Stat Ann 1959 Cum Supp § 17.141 *et seq.*]).

moval of foreign materials from the ore to prevent their getting into the crusher, and to break up larger chunks of ore with a sledge hammer so that the pieces would be small enough to go through a large rail screen. The work also involved a certain amount of effort in the operation and control of the mechanism. The record indicates that Mottonen had difficulty in doing the work in question, and that a fellow employee, on occasions at least, assisted him in the performance of his duties. It also appears that a representative of the employee's union sought to assist by suggesting to defendant that Mottonen be given lighter work, but was told that no easier job was available. It is a matter of inference that defendant was aware of the situation. During the night of April 9, 1957, as appears from the testimony of his fellow worker, Mottonen experienced much difficulty, being compelled to rest several times and complaining of dizziness and chest pains. Shortly after finishing his shift his death occurred on the premises of the defendant.

The medical testimony was materially in dispute as to the precise cause of death, and to some extent as to the exertion that Mottonen had been required to expend. The referee, weighing the testimony taken before him, denied compensation. The appeal board reversed, finding, as set forth in its opinion that:

"The arduous physical effort of deceased in the rock house during a period of weeks immediately prior to April 10, 1957, was directly related to his death. Such physical effort precipitated the final heart attack which deceased suffered and caused his death. Deceased sustained a personal injury arising out of and in the course of his employment and due to causes and conditions characteristic of and peculiar to the business of the employer."

It is apparent from the language quoted that the appeal board had in mind the provisions of part 7, § 1(c), CL 1948, § 417.1 (Stat Ann 1950 Rev § 17.220), of the statute which defines the term personal injury as including "a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment." In other words, the award of the appeal board was predicated on part 7 of the act under which the right of recovery involves somewhat different considerations than obtain in instances where the application for compensation is based on part 2. *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Company,* 329 Mich 273. In consequence, we are not here concerned with whether the decisions in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, *Coombe* v. *Penegor,* 348 Mich 635, and other cases involving awards under part 2, were based on a proper interpretation of the statute.

The question before us in the instant case is whether there was competent testimony to support the factual finding of the appeal board with reference to the cause of Mottonen's death. If so, then such finding is conclusive. CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186). *Hooks* v. *Wayne County Road Commissioners,* 345 Mich 384, 392, and prior decisions there cited. Our examination of the record brings us to the conclusion that the board's finding was supported by competent medical testimony, and also by proofs as to the nature of the work in which Mottonen had been engaged for some weeks prior to his death and the conditions and circumstances under which such work was performed. Apparently the work in the rock house was too strenuous for him without endangering his life. The testimony of his fellow workman is significant in this regard.

For the reasons indicated we concur in affirmance of the award.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

BLACK, J. (*concurring*). For reasons given over my signature in *Coombe* v. *Penegor,* 348 Mich 635, I concur with the legal conclusion of the appeal board, reached under part 7 of the workmen's compensation act, that Mr. Mottonen "sustained a personal injury arising out of and in the course of his employment and due to causes and conditions characteristic of and peculiar to the business of the employer." On that ground my vote to affirm is cast.