### TROBAUGH v CHRYSLER CORPORATION

WORKMEN'S COMPENSATION—EVIDENCE—EXHIBITS.

> Workmen's Compensation Appeal Board's reversal of referee's award of benefits was proper even though technical papers and newspaper articles were attached by the defendant employer to its supplemental brief filed with the Workmen's Compensation Appeal Board and the papers and articles were not introduced at the hearing before the referee where the Appeal Board listed the facts on which it based its decision and this list showed that the inadmissible exhibits were not considered.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 January 31, 1972, at Detroit. (Docket No. 11968.) Decided February 25, 1972.

Lois Trobaugh presented her claim for workmen's compensation benefits against Chrysler Corporation. The Workmen's Compensation Appeal Board reversed referee's award. Plaintiff appeals by leave granted. Affirmed.

*Kelman, Loria, Downing & Schneider* (by *Rodger C. Will*), for plaintiff.

*Lacey & Jones* (by *F. L. Sylvester*), for defendant.

Before: LESINSKI, C. J., and J. H. GILLIS and QUINN, JJ.

REFERENCE FOR POINTS IN HEADNOTE
58 Am Jur, Workmen's Compensation § 431 *et seq.*

QUINN, J. Plaintiff's petition for a hearing with the Workmen's Compensation Department alleged that her husband's death from lung cancer was caused by exposure "to harmful and irritating fumes and other materials at work" while in the employ of defendant. The referee found for the plaintiff and awarded compensation benefits. On appeal to the Workmen's Compensation Appeal Board, this award was reversed. On leave granted, plaintiff appeals.

Evidence introduced before the referee indicated that plaintiff's decedent was born January 1, 1935, and began working for defendant in November 1954. Further, that although he smoked 1-1/2 to 2 packs of cigarettes daily most of his adult life, he had no respiratory or lung problem prior to October 1966, and that he died of lung cancer March 27, 1967.

Decedent was employed as a Hi-Lo truck driver and worked in a building 300 to 400 yards square. The building contained machinery and 80 to 90 Hi-Los, some of which operated on batteries and some on liquid propane. For seven or eight years prior to decedent's death, about 75% of the Hi-Los were propane-powered. Most of the time, decedent operated a battery-powered Hi-Lo.

There was evidence before the referee that when the propane-powered motors were not functioning properly, they gave off more exhaust fumes; that complaints were made about the fumes which resulted in the repair of the offending motors. Further testimony indicated that the building smelled of exhaust fumes resembling automobile exhaust fumes, and that the union had negotiated for a better ventilating system.

The deposition of plaintiff's medical expert was introduced before the referee. The hypothetical question put to this expert as a basis for his opinion on causation described the Hi-Lo as a "gasoline

motor machine". The expert's opinion was that the exhaust of gasoline motors, especially when not functioning properly, contributed definite amounts of cancer-producing chemicals, and that the main causal factors active in the deceased's development of lung cancer were the carcinogenic materials inhaled from the forklift's (Hi-Lo) motor exhaust.

The deposition of defendant's medical expert was also introduced before the referee. The hypothetical question on which he based his opinion referred to Hi-Los as "gasoline motor type operated or propane gas type operated". He testified generally that he knew of no evidence that cancer of the lungs was caused by exposure to exhaust fumes, and that the cigarettes were the most likely cause of the cancer.

Defendant filed a supplemental brief with the appeal board April 5, 1971 to which were attached several exhibits that were not before the referee. These exhibits were technical papers and newspaper articles indicating that propane is a low emission fuel. On appeal, plaintiff attacks the submission of these exhibits that were not in the record before the referee.

In its opinion dated May 13, 1971, the appeal board held in part:

"Plaintiff presented the testimony of a certified specialist in pathology and preventive medicine. In answer to a hypothetically posed question the doctor opined a causal relationship between an exposure to 'gasoline exhaust fumes' and the development of lung cancer. Defendant presented the testimony of an internist and cardiologist who states that he treats patients with lung and other types of carcinoma. This doctor expressed the opinion that the death of deceased was in no way related to the conditions of his employment by defendant. We believe that defendant correctly points out that

plaintiff's medical is premised upon facts not disclosed by the record of proofs. Plaintiff's medical theory was based upon an exposure to gasoline exhaust fumes, a fact not disclosed by the proofs submitted. Deceased was exposed to the exhaust of Hi-Los which burned propane gas. The extent of this exposure is in dispute and we are of the opinion that the weight of evidence shows that deceased himself drove an electrically-powered Hi-Lo approximately 75% of the time which did not even burn propane gas. The only exposure he would have to the exhaust from the trucks which burned the propane gas while he was driving the electrically-powered truck would be from trucks which were driven by other employees in what was described as an extremely large, high and well ventilated building. *Whether the exhaust of trucks which burn propane gas are identical to the exhaust which burn gasoline is not disclosed by the proofs before us.* From newspaper reports it would appear that modern day ecologists do not believe that the exhausts are the same. *The failure to show an excessive exposure to gasoline fumes, the fact that it was shown that he personally drove an electrically-powered truck a large percentage of the time, the defect in the medical testimony which is premised upon excessive exposure to gasoline exhausts, the admitted excessive cigarette smoking habit of the deceased, the rather multiple lymph node involvement,* all tend to make the referee's finding too speculative to warrant affirmance here. We hold that the plaintiff has failed to meet her burden of proof to show that the death of her husband was due to causes and conditions to which he was exposed while employed by the defendant. The order of the referee is, therefore, reversed and compensation is denied." (Emphasis supplied.)

Plaintiff states the issues on appeal as:

"I. Where the Workmen's Compensation Appeal Board receives evidence without affording a party

a hearing pertaining to the admissibility of such evidence, has the aggrieved party been deprived of due process of law?

"II. Where the Workmen's Compensation Appeal Board has relied on inadmissible evidence, is an award entered pursuant thereto supported by the record?"

We note a third issue which we deem controlling and which we consider first. It is:

"Did the exhibits attached to defendant's supplemental brief cause the Workmen's Compensation Appeal Board to reverse the hearing referee?"

Plaintiff bore the burden of proof to establish her claim, *Levanen* v *Seneca Copper Corp,* 227 Mich 592 (1924). The hearing on appeal from the referee was a *de novo* hearing, *Fawley* v *National Lead Co,* 342 Mich 100 (1955), and plaintiff had the burden of proving her claim before the appeal board.

The above quotation from the opinion of the appeal board establishes six facts (underlined) as the basis of its opinion that plaintiff had not met this burden. Not one of these facts relates to the evidence challenged by competent, material, and substantial evidence on the whole record.

This analysis obviates discussion of the two issues raised by plaintiff.

Affirmed with costs to defendant.

All concurred.