## FERGUS v CHRYSLER CORPORATION

### OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT— APPEAL AND ERROR.

   The Court of Appeals cannot overturn findings of fact made by the Workmen's Compensation Appeal Board when the findings are supported by *any* evidence (MCLA 413.12).

2. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT— IMPLIED FINDINGS—APPEAL AND ERROR.

   The Workmen's Compensation Appeal Board is not required to make specific findings of fact in its opinion; where there is evidence to support the findings of the majority opinion the Court of Appeals draws necessary inferences from the findings to affirm an award.

### DISSENT BY LEVIN, J.

3. WORKMEN'S COMPENSATION—APPEAL BOARD—DECISION OF REFEREE —PRESUMPTION OF VALIDITY—DE NOVO REVIEW.

   *The Workmen's Compensation Appeal Board may not indulge some kind of presumption of validity in favor of the conclusion of the referee but is obliged to exercise its own independent judgment because the appeal board is required to review the referee's conclusion de novo.*

4. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT— IMPLIED FINDINGS—APPEAL AND ERROR.

   *The Court of Appeals may not affirm a decision of the Workmen's Compensation Appeal Board denying benefits to a claimant by assuming that the appeal board resolved issues of credibility against the claimant where it appears that the board acted under an erroneous understanding of the law.*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 58 Am Jur, Workmen's Compensation § 532.
[3] 58 Am Jur, Workmen's Compensation § 538.
[5] 58 Am Jur, Workmen's Compensation §§ 247, 255.

5. WORKMEN'S COMPENSATION—PROXIMATE CAUSE OF INJURY—PRE-EX-
ISTING DISEASE.

> In a case involving a heart attack where the claimant had a
> history of a heart condition, exertion need not be the sole cause
> of an injury for the claimant to qualify for workmen's compen-
> sation benefits; it is enough that it is a contributing cause of
> the injury, because the presence of a pre-existing disease does
> not bar compensation where the record shows that a disabling
> injury arose out of and during the course of employment.

Appeal from the Workmen's Compensation Ap-
peal Board. Submitted Division 2 June 23, 1972, at
Detroit. (Docket No. 13475.) Decided February 23,
1973. Leave to appeal granted and case remanded
to the Workmen's Compensation Appeal Board for
further proceedings and determination, 389 Mich
811.

James Fergus presented his claim for workmen's
compensation benefits against Chrysler Corpora-
tion. Benefits denied. Plaintiff appeals. Affirmed.

*Levine & Benjamin, P. C.,* for plaintiff.

*Lacey & Jones* (by *Hayim I. Gross),* for defend-
ant.

Before: J. H. GILLIS, P. J., and McGREGOR and
LEVIN, JJ.

McGREGOR, J. Plaintiff filed suit against defend-
ant for workmen's compensation benefits. The
compensation hearing referee found that plaintiff
had failed to establish that his disability was
causally related to his employment. The Work-
men's Compensation Appeal Board affirmed the
referee. Plaintiff appeals this decision.

There is agreement between the litigants and
between the majority and dissenting opinions of
the appeal board that the plaintiff had a heart
condition and that he suffered four separate heart
attacks from 1955 through 1963. What is disputed
is whether the condition arose out of claimant's

employment or as a result of a diabetic condition not related to his employment.

Before we examine that issue it is best to reexamine our function as an appellate court when reviewing decisions of the Workmen's Compensation Appeal Board. In *Thornton v Luria-Dumes Co-Venture*, 347 Mich 160, 162–163 (1956), a unanimous Court explained:

"Our jurisdiction, invoked upon issuance and return of certiorari to the workmen's compensation department, is markedly limited. The writ brings us questions of law only. It does not permit scale-weight of evidence and inference here, as on appeals from circuit court judgments, to determine whether administrative *findings of fact* offend rules governing clear weight and preponderance. *Our obligation is to accept, without question, findings that are certified here if there be any evidence whatever to sustain those findings, regardless of thought or suggestion addressed to improbability thereof.* Furthermore, and when we employ as above the word 'evidence,' synonymity with the word 'facts' is not intended. 'Evidence' is really the means by which inferences may logically be drawn as to the existence of facts." (Emphasis supplied.)

That the dispute in the instant case concerns findings of fact, and not questions of law, is made clear in the opinion of the dissenting members of the appeal board:

"As was pointed out by my associate, Member Bowerman, plaintiff testified that he suffered heart attacks in 1955, 1959, 1962 and 1963 and that in each case the attack had its onset while at work for the defendant. Of course, this one fact, standing alone, is not determinative of the question of causal relationship.

"Medical reports from doctors examining on behalf of the two parties arrive at different conclusions regarding causality.

\* \* \*

"The type of stress described by plaintiff is measured subjectively. What is stressful to one individual might be incidental to another. Most often the trier of the facts is limited in such a determination when faced with diametrically opposing medical opinion."

The dissenting members of the appeal board found that the emotional stress of plaintiff's job was too much for his condition.[1] Defendant's doctor stated that the plaintiff's heart disease was associated with a diabetic condition.

This was a 4–3 decision. Had one of the majority members of the appeal board voted with the dissenting members, we would have been likewise bound to affirm that decision under our Constitution,[2] statutes,[3] and existing case law. We are not fact finders, and this Court cannot overturn the findings of fact made by the appeal board when these findings are supported by proof. See *Johnson v Vibradamp Corp*, 381 Mich 388, 390 (1968).

As noted above, the dissenting board members concede that there was evidence offered to support *both sides* on the disputed causality issue. We can inquire no further. This panel is in complete agreement that we are required to affirm a finding of the appeal board if it is supported by *any* evidence.

In *Clark v Apex Foundry, Inc*, 7 Mich App 684, 688–689 (1967), this Court, in an opinion written by Judge LEVIN, stated the following:

"The appeal board made no express finding as to the adequacy of notice. Nevertheless, since a finding

---

[1] The claimant contended that the *physical exertion* of his work brought about the heart condition while the dissenting members of the appeal board and plaintiff's doctor stated that *emotional stress* precipitated the injury.

[2] Const 1963, art 6, § 28.

[3] MCLA 413.12; MSA 17.186.

thereon for Clark is essential to an award of compensation, we are warranted in concluding the appeal board impliedly found that Apex received proper notice and must affirm such implied finding if it is supported by evidence. See *Trice v Orchard Farm Pie Co*, 281 Mich 301, 305 (1937), where the Supreme Court stated it was a 'necessary inference' from the finding denying compensation that it had been found that a certain report had been properly filed by the employer, because otherwise the statutory limitation there relied on to deny compensation would not have been applicable; and *Ganges School District No 4 v Smith*, 330 Mich 254, 259 (1951), where the Supreme Court stated that a finding that the workmen's compensation act is applicable is 'inherent' in an award of compensation; and *Donahoe v Ford Motor Co*, 295 Mich 422, 427, 428 (1940), where the Supreme Court inferred from the amount of the award a finding as to the employee's earning capacity."

We fully recognize that a busy appeal board with a backlog of cases often may not make specific fact findings in its opinion. Nevertheless, as noted by Judge Levin in *Clark, supra,* and our Supreme Court in *Trice, supra,* where there is evidence to support the findings of the majority opinion, we draw necessary inferences from the findings and affirm the award. We do not require the appeal board to give a complete analysis of why it believed or disbelieved a particular witness or why it feels that the burden of proof on the part of the claimant has not been met.

The concluding paragraph of the appeal board's majority opinion stated:

"The record does not support a finding of a compensable injury and is extremely inadequate and completely lacking the consistency necessary to support a reversal of the referee."

The appeal board is affirmed.

J. H. Gillis, P. J., concurred.

LEVIN, J. *(dissenting).* In *Zaremba v Chrysler Corp,* 377 Mich 226, 231 (1966), the Michigan Supreme Court, in an opinion authored by Mr. Justice O'HARA, addressed itself to the question whether the Workmen's Compensation Appeal Board properly denied compensation in a case where the workman suffered a fatal heart attack while operating a drill during his employment by the defendant. In remanding for further fact finding, the Court quoted a passage from *Bryant Stave & Heading Co v White,* 227 Ark 147; 296 SW2d 436 (1956), as properly reflecting the legislative intent of the Michigan statute. The passage reads as follows:

" 'Notwithstanding anything we may have said in prior cases, we hold that an accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, *whatever the degree of exertion or the condition of his health,* provided the exertion is either the sole or a contributing cause of the injury. In short, that an injury is accidental when either the cause or result is unexpected or accidental, *although the work being done is usual or ordinary.' "* (Emphasis by the Court.)

It will be observed that the exertion need only be a contributing cause for compensation to be awarded.

Earlier, in *Mottonen v Calumet & Hecla, Inc,* 360 Mich 659, 660–661, 667 (1960), the Supreme Court affirmed the determination of the Workmen's Compensation Appeal Board awarding compensation to an employee, with a history of heart ailment, who died of a heart attack during the course of his employment. Mr. Justice EDWARDS, in an opinion signed by three other justices, said:

"The *Sheppard [Sheppard v Michigan National Bank,*

348 Mich 577 (1957)] and *Coombe [Coombe v Penegor,*
348 Mich 635 (1957)] cases served to eliminate from
construction of the Michigan workmen's compensation
statute the former case-law requirement of proof of an
accident ('a fortuitous circumstance') (see *Arnold v Ogle
Construction Co,* 333 Mich 652 [1952]) as a condition
precedent to recovery of compensation where the statu-
torily-required proofs were present. *Coombe* also held
that the fact of a pre-existing disease or injury did not
bar compensation where the record showed that a
disabling injury arose out of and during the course of
employment without proof of accident or fortuitous
event.

"In both of these cases, the injured party was doing
his or her regular work in the regular way but so doing
occasioned disabling personal injury and compensation
was granted. We read these cases as definitely rejecting
the argument of the referee and the defendant herein
that Mottonen's widow may not, as a matter of law,
recover compensation absent proof of 'unusual strain.' "

Mr. Justice CARR, writing for himself and two
other justices, concurred, saying in part: "Appar-
ently the work in the rock house was too strenu-
ous for him without endangering his life".[1]

---

[1] The history of Michigan's workmen's compensation coverage for
heart attacks has been traced by Professor Larson, perhaps the
foremost authority in this area of the law, who wrote:

"The Michigan experience is significant because it provides one of
the most dramatic illustrations of the over-all trend in the heart
cases. Michigan began establishing restrictions based on the 'accident'
concept without even having a 'by accident' limitation in its basic
statutory coverage clause. However, in common with two other juris-
dictions, Michigan read the 'accidental' requirement into the coverage
formula anyway, and, so equipped, proceeded to develop a typical line
of cases denying compensation in the absence of unusual exertion.
For example, compensation was denied for heart attacks suffered by a
salesman while driving in a snow storm, a fire warden while perform-
ing his duties, and an employee while testifying in court.

"At the same time, Michigan like every other jurisdiction with the
unusual-exertion requirement, was occasionally producing a case
which gave the unmistakable impression of clutching at straws in
order to save awards by finding unusualness in the most trivial
circumstances. For example, in *Schlange v Briggs Mfg Co* [326 Mich
552 (1950)], a coronary thrombosis was attributed to the workman's

## I.

In this case the Workmen's Compensation Appeal Board voted four to three to deny compensation. Plaintiff, James Fergus, alleged that he suf-

---

'performing his usual work in an unusual manner and with the exertion of unusual force.' The unusualness arose from the fact that the workman was using a round collet instead of a hexagonal one to hold a hexagonal fixture, and extra effort was required because of the tendency of the fixture to slip.

\* \* \*

"The decisions which finally reversed the Michigan rule were not heart cases, but there was never any doubt that the heart cases were embraced within the new principles established in *Sheppard v Michigan National Bank* [348 Mich 577 (1957)] and *Coombe v Penegor* [348 Mich 635 (1957)]. *Sheppard* involved a back injury which occurred when claimant tugged at a tray of cards weighing about twenty-five pounds. *Coombe* involved a cerebral hemorrhage and stroke resulting from the claimant's strenuous but usual exertion in fastening logs onto a logging truck with chains.

\* \* \*

*"What clearly emerges from the dust of battle is that the accidental quality of an injury in Michigan can now be supplied by an unexpected result, that unusual exertion is not indispensable in heart and similar cases, and that pre-existing weakness or disease does not alter this basic rule.*

\* \* \*

"This is not the end of the matter. In 1960, Justice EDWARDS found himself in the position of writing the majority opinion in the case which clearly applied the new doctrine to a heart attack, *Mottonen v Calumet & Hecla, Inc* [360 Mich 659 (1960)].

\* \* \*

"[In] *Zaremba v Chrysler Corp* [377 Mich 226 (1966)] \* \* \* one final attempt to make the *Sheppard* and *Coombe* rule stop short of the usual-exertion test was firmly put down by the court. The Workmen's Compensation Board's interpretation of the cases was rejected and the court held that the exertion which caused disability or death did not have to be 'strenuous' in character.

\* \* \*

"Consequently, for whatever the observation is worth, we now seem to have at least a five to three majority agreeing upon the meaning of *Sheppard*. So understood, the Michigan rule as to the range of heart and similar cases which are compensable as accidental injuries is now as generous as that of any jurisdiction in the country." Larson, *The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution,* 65 Mich L Rev 441, 447–453 (1967).

fered a personal injury on December 31, 1963, in the nature of an aggravation of previously existent arteriosclerotic cardiovascular disease by emotional and physical stresses resulting in myocardial infarct. Fergus testified that he suffered heart attacks in 1955, 1959, 1962, and 1963 and that in each case the attack had its onset while he was at work. Both Fergus' and Chrysler's doctors appeared to be in agreement that Fergus has a history of heart disease. Fergus' doctor stated that Fergus "gives clear indication of having exceeded his functional cardiovascular capacity in the final years of his employment by the repeated episodes of angina and dyspnea, and in this way further served to put serious stress on his already seriously impaired cardiovascular system". Chrysler's doctor stressed that Fergus was also a diabetic, saying, "He is a diabetic and the appropriate diagnosis would be arteriosclerotic heart disease with angina pectoris associated with the diabetes".

The majority of the appeal board declared that compensation was being denied because, "The record does not support a finding of a compensable injury and is extremely inadequate and completely lacking the consistency necessary to support a reversal of the referee". The appeal board majority did not elaborate on that conclusory statement; it did not specify the nature of the deficiency in Fergus' proofs.

Fergus testified that he first worked for Chrysler in 1946. In 1948 he became a draw-die man. In 1962 he experienced chest pains for a whole week, "and on the Friday I had a real bad morning and it kept building up". By the time he reached home he could hardly breath and had to enter the hospital again. That was the last episode in 1962.

In March, 1963 Fergus went back to work for

Chrysler. He reported on a Monday and worked all week until Friday. He was having trouble performing his work satisfactorily and experienced "pressure, and the pain started up again". He left work before the end of the Friday workday, experienced a cardiac episode and was taken to the hospital. The diagnosis was that he had suffered a heart attack.

On the advice of a physician, Fergus quit after the March, 1963 attack and took a disability retirement. He testified in 1970 that he had not had an attack since leaving work and had never experienced an onset of chest pains while away from his employment.

The dissenting members said:

"The type of stress described by plaintiff is measured subjectively. What is stressful to one individual might be incidental to another. Most often the trier of the facts is limited in such a determination when faced with diametrically opposing medical opinion. Frequently he must rely on a credibility assessment of the testimony of all witnesses. However, we are here aided by plaintiff's own assessment of the effects of emotional stress at a time remote from the date of his petition and presumably at a time when the thoughts of litigation did not influence that assessment.

\* \* \*

"Obviously, the emotional stress of plaintiff's job was too much for his condition. He was conscientious, he was hard working, he took matters seriously and felt threatened by superiors who he described as 'breathing down my neck.' "

The dissenters, on the authority of *Zaremba,* would have awarded compensation.

## II.

I recognize that we are required to affirm a

finding of the appeal board if it is supported by any evidence. Here, however, there is no evidence whatsoever that Fergus left his employment for any reason other than the reason advanced by him, namely, the aggravation of his heart condition by the strain of his employment.

If the appeal board had found that Fergus' testimony was not credible, then, probably, we would have no choice but to accept its evaluation of Fergus as a witness. But that is not the basis on which compensation was denied.

The appeal board majority's statement that the record is "extremely inadequate and completely lacking the consistency necessary to support a reversal of the referee" is not an accurate description of the record. The entire record consistently supports Fergus' claim that he was forced to leave his employment because his heart condition was aggravated by stressful work conditions.

It was manifest error for the appeal board to indulge some kind of presumption of validity in favor of the conclusion of the referee.[2] The appeal board is required to review the referee's conclusion *de novo*.[3] It is obliged to exercise its own independent judgment. The scales are not tipped one way or the other by the referee's finding. We review the appeal board, not the referee.[4]

### III.

My colleagues' reliance on *Clark v Apex*

---

[2] The referee's decision contains not one word of finding or explanation in support of his conclusion that compensation should be denied.

[3] *Margenovitch v Newport Mining Co,* 213 Mich 272, 277 (1921); *Fawley v Doehler-Jarvis Division of National Lead Co,* 342 Mich 100, 102 (1955); *Trobaugh v Chrysler Corp,* 38 Mich App 758, 762 (1972).

[4] *Cf. Pulley v Detroit Engineering & Machine Co,* 1 Mich App 346, 351 (1965).

*Foundry, Inc,* 7 Mich App 684, 688 (1967), is misplaced. In the very next volume of our reports we said of the *Clark* opinion:

"It is one thing to search the record for evidence to support a finding necessarily made by the board as we did in *Clark v Apex Foundry, Inc,* 7 Mich App 684 (1967). It is quite another to search the record in an endeavor to discover evidence to justify inferences and findings that the appeal board might decline to make." *Thomas v Griffin Wheel Co,* 8 Mich App 35, 46 (1967).

Merely because the appeal board could be affirmed on the supposition that it decided against Fergus by resolving issues of credibility against him does not warrant us in proceeding on that assumption where it appears that the board acted under an erroneous understanding of the law. In *Zaremba,* the Supreme Court, confronted with a similar situation, remanded for further consideration by the appeal board.[5]

---

[5] On this aspect of the case, the *Zaremba* Court declared:

"The principle of review involved is whether where the administrative body makes a determination of fact, binding upon us, but includes in its opinion an erroneous statement of law, we should affirm on the basis of the facts found, or reverse and remand for reconsideration by reason of the incorrect legal test stated.

"The problem is difficult. We are called upon, in reality, to define the thought-decisional process of the board. This is to ask whether the finding of fact would have been the same irrespective of the misconception of law that is reflected in the majority holding of the divided board.

\*  \*  \*

"Thus it is abidingly clear that under this rule the appeal board was perfectly free to accept as more credible the testimony of the defendant's doctors. It was perfectly free to find that the exertion required of decedent in his work at the time was totally unrelated to the cardiac catastrophe.

"It is equally clear that the board was not free to conclude legally that:

" 'The connecting causative thread between work and disability or death [in cases where benefits have been granted] has been the *strenuous character of the work being done.'* (Emphasis by the Court.)

"How to disengage this erroneous concept from the board's fact-

On this record and on the inadequate conclusory opinion of the appeal board we should remand, as we did in *McClary v Wagoner,* 16 Mich App 326, 327–328 (1969), for specific fact finding by the appeal board. As we said in that case:

"We cannot, however, review the findings of the board as a question of law if, as in this case, it has done nothing more than to present us with a conclusory finding in the form of the statutory language. We need to know the path the board has taken through the conflicting evidence. The appeal board should indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion. See *United States v Merz,* 376 US 192; 84 S Ct 639; 11 L Ed 2d 629 (1964), *reh den,* 376 US 973; 84 S Ct 1131; 12 L Ed 2d 87. 2 Davis, Administrative Law Treatise, §§ 16.05, 16.06. *Cf.* 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 594."

Accord: *Lamb v John's Tavern,* 37 Mich App 678, 681 (1972).

## IV.

In this case, the appeal board having ignored pertinent testimony of Fergus without any finding

finding process, legislatively removed from judicial review, eludes us. We would perforce have to ascertain whether the majority in its reasoning to a factual conclusion posited *first* the 'strenuous character' concept test to the nonmedical fact background of the type of work being performed and *then* considered the opinion evidence of causality or lack thereof, in light of that first finding. This we cannot undertake. The reasoning process of the board is relayed to us by words. The words they used clearly, we think, impart a consideration by the majority board of a fallacious test. At what precise point this test was applied, we cannot determine.

"For this reason we vacate the order of the board and remand the cause for reconsideration upon the record already made, to determine whether under the test we here established or affirmed, stripped of the strenuous character test, decedent's work, whatever its nature, was causally related to the fatality." *Zaremba v Chrysler Corp,* 377 Mich 226, 228, 231–232 (1966).

that he was not a believable witness, and having, it would appear, proceeded on a misapprehension concerning its function, I would remand for specific fact finding whether the appeal board regards as credible the testimony of plaintiff James Fergus and, if not, why not. And if his testimony is believable, for further and explicit findings on the issue whether his disability was job related.

I would further require the appeal board to speak directly to the question whether, in reaching its conclusions, it has applied the *Zaremba* test that the exertion need not be the sole cause of the injury, that it is enough if it is a contributing cause of the injury, that, as stated in the earlier case of *Coombe,* the presence of a preexisting disease or injury does not bar compensation where the record shows that a disabling injury arose out of and during the course of employment.