STEEL v SUITS NEWS COMPANY

Docket No. 56874. Argued May 5, 1976 (Calendar No. 3).—Decided
December 7, 1976.

Plaintiff James L. Steel was granted workmen's compensation for
a disability as a result of a stroke he suffered which was found
by the Workmen's Compensation Appeal Board to be related to
the nature of his employment with defendant Suits News
Company. The Court of Appeals, McGregor, P. J., and Quinn
and Cavanagh, JJ., denied leave to appeal (Docket No. 56874).
Defendant alleges that there was no evidence that the plain-
tiff's stroke was caused by his employment. Defendants Suits
News Company and Michigan State Accident Fund appeal.
*Held:*

An injury arises out of the employment of a person claiming
workmen's compensation benefits when the required exertion
producing the injury is too great for the person undertaking
the work, whatever the degree of exertion or the condition of
his health, provided the exertion is either the sole or a contrib-
uting cause of the injury. While the Workmen's Compensation
Appeal Board applied the proper legal standard, its finding that
the plaintiff's long hours of work and job responsibility "could
well have contributed" to his cerebral vascular hemorrhage
does not clearly state whether the employment caused or
contributed to the injury. The Supreme Court cannot discharge
its review function if the facts are imprecisely or unclearly
stated.

Justice Lindemer dissented on the ground that a finding that
the plaintiff's long hours of work and job responsibilities "could
well have contributed" to his hemorrhage is not a finding upon
which liability can be predicated. The test is that the exertion
complained of must *be* either the sole or a contributing cause of
the injury. On the record neither the referee nor the Work-

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 82 Am Jur 2d, Workmen's Compensation §§ 241, 309.

[2] 82 Am Jur 2d, Workmen's Compensation § 553 *et seq.*

Necessity, form, and contents of findings of fact to support adminis-
trative determinations relating to workmen's compensation. 146
ALR 123.

men's Compensation Appeal Board so found, the award of the latter being based only on conjecture, and the decision of the appeal board should be reversed.

Remanded to the Workmen's Compensation Appeal Board for a more definite factual determination, jurisdiction retained.

### Opinion of the Court

1. Workmen's Compensation—Words and Phrases—Injury—Arising Out of Employment.

An injury arises out of the employment of a person claiming workmen's compensation benefits when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or a contributing cause of the injury.

2. Workmen's Compensation—Workmen's Compensation Appeal Board—Findings of Fact—Appeal and Error.

A finding of the Workmen's Compensation Appeal Board that a claimant's long hours of work and job responsibility "could well have contributed" to his cerebral vascular hemorrhage does not clearly state whether the employment caused or contributed to the injury; the Supreme Court cannot discharge its review function if the facts are imprecisely or unclearly stated and remands the case to the Workmen's Compensation Appeal Board for a more definite finding (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

### Dissenting Opinion

### Lindemer, J.

3. Workmen's Compensation—Injury—Arising Out of Employment—Findings of Fact.

*A finding of the Workmen's Compensation Appeal Board that a claimant's long hours of work and job responsibility "could well have contributed" to his cerebral vascular hemorrhage is not a finding upon which liability can be predicated.*

4. Workmen's Compensation—Words and Phrases—Injury—Arising Out of Employment.

*An injury arises out of the employment of a person claiming workmen's compensation benefits when the required exertion producing the injury is either the sole or a contributing cause of the injury.*

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay)* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.* (by *James A. Sullivan)* for defendants Suits News Company and Michigan State Accident Fund.

COLEMAN, J. The Workmen's Compensation Appeal Board has awarded compensation. We agree that the board has applied the proper legal standard. We remand this case to permit the board to make a more definite factual determination.

Plaintiff was first employed by Suits News Company in 1957 as a warehouse stock clerk. He worked his way up to outside salesman and eventually was made a supervisor. He was responsible for putting up magazine orders and insuring their delivery. If a deliveryman called in sick, took a vacation or quit, plaintiff would deliver the magazines.

Plaintiff was in charge of receiving for the entire warehouse. The employer testified about these duties:

"*Q.* And as part of his duties for—in charge of receiving, was he expected to be there?

"*A.* Yes. If we had a night delivery or a weekend delivery, he was expected to go over and get it in out of the weather. That was one of his jobs.

"*Q.* As a matter of fact, his name was the one that was on the wall to call Jim Steel if there is anything wrong, right?

"*A.* Yes, his name was there for police if a door was left open, a delivery—

"*Q.* So if there was breakin or something of that nature or night delivery or fire or anything of that

nature he was the guy that was to be called, is that right?

"*A.* Yes."

To supplement his salary, plaintiff also cut the lawn, washed the delivery trucks and shoveled snow. He worked an average of 60 hours and occasionally as much as 100 hours per week.

February 1, 1969, was a Saturday. Plaintiff had brought three or four skids of magazines off the delivery dock. He oversaw the loading of trucks and cleaning of the warehouse. He washed four or five trucks when he began to feel "dizzy and weak * * * I felt like I was drunk". His wife took him home. He was taken to a hospital on February 3 for what was later described as "an intercranial bleed, hemorrhage of not quite sure what type, whether it was an aneurysm or what, this was a cerebral vascular hemorrhage of unknown etiology".

The deposition of plaintiff's physician, Dr. Turner, is part of the record and was introduced at the hearing. Plaintiff's work history and the events of the injury were described to Dr. Turner. He was then asked his "opinion as to the relationship of those duties to the condition which you have diagnosed and treated":

"I'd have to generalize on that. Most of the hemorrhages of this age group, he is a relatively young man, occur, are due to an aneurysm in the cerebral vascular vessels which is a weakening in the wall of that vessel, usually congenital. This whether it remains a whole wall or whether it ruptures or not is thought to be related to the blood pressure that the person is maintaining, and to add to that, that in permanent hypertension or in labile hypertension, either one of the two, that stress can, and often does, cause an elevation of blood pressure.

"*Q.* And by stress, what do you mean by that, Doctor?

"*A.* Stress of any kind, emotional fatigue, excitement, cold, this is one of the tests used for blood pressure, put the man's hand in cold water and see how the blood pressure responds."

Dr. Turner thought it was "the accepted theory" that with plaintiff's age group "stress from job could lead to an elevation of blood pressure which would cause the aneursym to pop".

In denying benefits, the referee said plaintiff "did not receive a personal injury arising out of and in the course of his employment". Although plaintiff "was a horse for work * * * he liked his work and was happy with it". The referee found "no indication of emotional stress or concern over pressure".

The appeal board reversed and found "the stroke to be a compensable happening". It found "plaintiff's long hours of work and job responsibility could well have contributed to his cerebral vascular hemorrhage".

MCLA 418.301(1); MSA 17.237(301)(1) compensates an employee "who receives a personal injury arising out of and in the course of his employment". Subsection 2 says the employee "shall be presumed to be in the course of his employment" if he is "on the premises where his work is to be performed". See *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973).

In its opinion the appeal board quoted from *Zaremba v Chrysler Corp,* 377 Mich 226, 231, 232; 139 NW2d 745 (1966). Plaintiff there had a heart attack while drilling holes in sheet metal. The appeal board denied compensation because they could not find the work strenuous enough to cause the attack. In reversing, the Court adopted this language:

" ' "Notwithstanding anything we may have said in prior cases, we hold that an accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, *whatever the degree of exertion or the condition of his health,* provided the exertion is either the sole or a contributing cause of the injury. In short, that an injury is accidental when either the cause or result is unexpected or accidental, *although the work being done is usual or ordinary."* '(Emphasis this Court's.)"

The Court remanded "for reconsideration upon the record already made to determine whether * * * decedent's work, whatever its nature, was causally related to the fatality".

The plaintiff in *Fergus v Chrysler Corp,* 45 Mich App 196, 209; 206 NW2d 521 (1973) had a history of heart trouble. The appeal board found the disability was not related to employment. The dissent argued for a remand in part to determine if the appeal board

"has applied the *Zaremba* test that the exertion need not be the sole cause of the injury, that it is enough if it is a contributing cause of the injury, that, as stated in the earlier case of *[Coombe v Penegor,* 348 Mich 635; 83 NW2d 603 (1957)], the presence of a preexisting disease or injury does not bar compensation where the record shows that a disabling injury arose out of and during the course of employment."

We granted leave and peremptorily remanded to the appeal board for further proceedings consistent with the dissent. 389 Mich 811 (1973). Also see *Galac v Chrysler Corp,* 63 Mich App 414, 418; 235 NW2d 359 (1975) where the "board was not free to conclude legally that the employee's death to be compensable required unusual stress or strain, physical or emotional, in a causative connecting chain".

In *Grammas v Donut Systems, Inc*, 52 Mich App 472, 473; 217 NW2d 423 (1974), the plaintiff suffered a stroke which the medical testimony attributed to either a hemorrhage (which could be work related) or an occlusion (which could not). The Court said the "sole question presented is one of fact". Plaintiff's high blood pressure plus job-related mental strain and physical exertion supported the board's conclusion that the injury was work related. The award was affirmed. Compare *Greene v International Industrial Contracting Corp*, 18 Mich App 193, 197; 171 NW2d 44 (1969), where the Court affirmed a denial of compensation because the appeal board's opinion "clearly intended to indicate that death was caused by an ordinary disease of life, and not from work-related exertion".

The appeal board in this case referred to *Zaremba* in support of its finding "that plaintiff's long hours of work and job responsibility could well have contributed to his cerebral vascular hemorrhage". We agree that *Zaremba* states the standard to be applied. However, the board's conclusion is too indefinite.

Under the constitution (art 6, § 28) and the statute (MCLA 418.861; MSA 17.237[861]) the board's findings of fact are conclusive in the absence of fraud. This grant of authority imposes a responsibility on the board to make its factual findings specific and clear. The statement that plaintiff's hours and responsibilities "could well have contributed" to his injury implies that they could well not have contributed.

The board found "the stroke to be a compensable happening". For us properly to review this conclusion, we must have the facts and a clear conclusion that the employment did or did not

cause or contribute to the injury. We cannot discharge our review function if the facts are imprecisely or unclearly stated.

We retain jurisdiction and remand to the Workmen's Compensation Appeal Board for proceedings in accordance with this opinion.

Kavanagh, C. J., and Williams, Levin, Fitzgerald, and Ryan, JJ., concurred with Coleman, J.

Lindemer, J. *(dissenting).* In this case the referee concluded "plaintiff's disability is not related to his work. The record is clear that he was a horse for work. He worked long hours and had a good measure of responsibility but it is also clear that he liked his work and was happy with it and there is no indication of emotional stress or concern over pressure." The testimony of plaintiff's doctor most favorable to plaintiff is as follows:

"*A.* I'd have to generalize on that. Most of the hemorrhages of this age group, he is a relatively young man, occur, are due to an aneurysm in the cerebral vascular vessels which is a weakening in the wall of that vessel, usually congenital. This *[sic]* whether it remains a whole wall or whether it ruptures or not is thought to be related to the blood pressure that the person is maintaining, and to add to that, that in permanent hypertension or in labile hypertension, either one of the two, that stress can, and often does, cause an elevation of blood pressure.

"*Q.* And by stress, what do you mean by that, Doctor?

"*A.* Stress of any kind, emotional fatigue, excitement, cold, this is one of the tests used for blood pressure, put the man's hand in cold water and see how the blood pressure responds.

"*Q.* All right. Had you ever seen Mr. Steel before '69?

"*A.* No, that was our initial meeting.

"*Q.* The stress that you talk about, Doctor, that would

be an individual thing, too, would it not, it would be an individual reaction to that kind of thing?

"*A.* Oh yes.

"*Q.* And could you describe again the mechanism by which an aneurysm would occur?

"*A.* Well an aneurysm—

"*Mr. Hammer [Attorney for State Accident Fund]:* I'll object to the question. You haven't laid any foundation for it, that he ever had an aneurysm.

"*Mr. Anderson [Attorney for plaintiff]:* Well the doctor suggested it was a possibility of an aneurysm in his prior testimony.

"*The Witness:* This is the most common cause of that age, that is the only thing I can say about that and it is congenital, it is believed to be congenital, present at birth.

"*[Mr. Anderson]:* And then what happens with an elevation or stress or things of that nature?

"*A.* It is unpredictable that the first stress can cause rupture or continued stress or continued elevation of blood pressure can cause rupture. It depends on the thickness of the blood vessel wall where the rupture occurs, this type of—the type that we think he had, the hemorrhage usually occurs in the early 30s, statistically."

The facts developed were that the plaintiff was a hard worker. He worked from 60 to 100 hours a week for this employer as a warehouse supervisor. He washed all of the trucks weekly, shoveled snow in winter, and mowed the lawn in the summer, for which he was compensated additionally. With his two sons he handled a newspaper route unrelated to his employment. Additionally, he built and owned stock cars for racing and drove them competitively in 1968. It is easy to comprehend the compassion felt by the WCAB as well as all others reading the record in this case. Nevertheless, the testimony is that plaintiff likely suffered an aneurysm. The doctor's testimony was that most of the

hemorrhages of this age group occur due to an aneurysm in the cerebral vascular vessels which is usually a congenital situation.

The WCAB found that plaintiff's long hours of work and job responsibilities "could well have contributed" to his hemorrhage. Such a finding is not a finding upon which liability can be predicated.

This Court in *Zaremba v Chrysler Corp,* 377 Mich 226; 139 NW2d 745 (1966), established the test that the exertion complained of must *be* either the sole or a contributing cause of the injury. On the record before us, neither the referee nor the WCAB so found, the award of the latter being based only on conjecture.

I conclude that the facts in this matter mandate a reversal of the WCAB and reinstatement of the decision of the referee.


*ORDER*

Entered May 25, 1977.—REPORTER.

This cause having been remanded to the Workmen's Compensation Appeal Board for proceedings in accordance with our opinion of December 7, 1976, the further proceedings were held by the Workmen's Compensation Appeal Board and plaintiff now has filed a motion to affirm the board's order. On order of the Court, the motion is considered and it is granted.