HOPE v WELCH GRAPE JUICE COMPANY

1. WORKMEN'S COMPENSATION—FAVORED WORK—REFUSAL—BENEFITS.
    An injured employee who refuses to accept an offer of employment for "favored work" which the employee is capable of performing is not entitled to workmen's compensation benefits.

2. WORKMEN'S COMPENSATION—FAVORED WORK—EVIDENCE—FINDING OF FACT.
    A specific firm offer of favored work employment by the employer to an injured employee which would be within the physical means of the injured employee to perform was not made where testimony disclosed that arrangements with a union would have to be made prior to a suitable job being made available to the injured employee; therefore, there was no evidence on the record to support the finding of fact made by the Workmen's Compensation Appeal Board that the employee was not entitled to compensation benefits because she refused to accept an offer of employment which was in her capacity to perform.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 March 6, 1973, at Grand Rapids. (Docket No. 14764.) Decided March 29, 1973. Rehearing granted May 2, 1973.

Wilma M. Hope presented her claim for workmen's compensation against the Welch Grape Juice Company and Royal Globe Insurance Company. Benefits granted. The Workmen's Compensation Appeal Board modified the referee's decision. Plaintiff appeals. Reversed.

*Rapaport, Siegrist, Sablich & Mitchell,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Sherman H. Cone),* for defendants.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation § 286.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

R. B. BURNS, P. J. Plaintiff worked for defendant Welch Grape Juice Company 19 years. On November 18, 1966 she slipped and fell during the course of her employment. Defendant voluntarily paid compensation for 90 weeks through August 8, 1968.

On August 18, 1969, a hearing was held at which time the referee awarded compensation from November 18, 1966 to August 18, 1969, with credit for compensation voluntarily paid, until further order of the bureau. Defendant appealed to the Workmen's Compensation Appeal Board which modified the decision of the hearing referee by terminating compensation payments as of August 18, 1969. From this decision the plaintiff appeals.

The sole issue presented on appeal is:

Was there any evidence in the record to support the findings of fact made by the Workmen's Compensation Appeal Board that plaintiff was not entitled to a continued award of workmen's compensation benefits because of a refusal by plaintiff to accept a bona fide offer of employment made by the employer, which employment was within her capacity to perform?

An injured employee who refuses to accept an offer of employment for "favored work", which said employee is capable of performing, is not entitled to workmen's compensation benefits. *Lynch v Briggs Manufacturing Co*, 329 Mich 168 (1950).

The following testimony is that of Bruce Martin, Personnel Supervisor of defendant:

"*Q. [by defendant's attorney]:* Dr. Hodgman has testi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fied in this case that in his opinion she can do any work that doesn't stress her back, doesn't cause stress to her back, doesn't require that she stand or sit for long periods of times. Do you have work of that type at Welch's that can be given to Mrs. Hope?

*"A.* I believe we do, yes sir.

*"Q.* Is the job of label inspector, requiring inspection of the jars, still open and can that be given to Mrs. Hope?

*"A.* Yes, I think I could arrange to have her assigned to that job.

*"Q.* And as far as you are concerned, the job on case rework has been available to Mrs. Hope since January, of 1969, when she was given a leave of absence?

*"A.* Yes.

*"Q.* And can it be made absolutely clear if necessary, Mr. Martin, that Mrs. Hope doesn't have to do lifting of 30 and 40 pounds when she comes back to work? Can that be made clear to the Union and to fellow employees?

*"A.* Yes, sir.

*"Q.* Are you at this time offering Mrs. Hope this work if she wants it?

*"A.* The offer has been available since her injury as far as I am concerned.

\* \* \*

*"Q.* Mrs. Hope has testified that she is Number 3 lady in seniority grouping. What does that mean in terms of being able to have almost any job in the plant she wants that women do?

*"A.* Our seniority system is such that you use your seniority to get semi-guaranteed jobs, guarantee whenever we need those people to work on certain jobs. She has seniority that *she could probably work the highest skill or the highest-paid preferred jobs that aren't held by what we phrase 'bid job holders'.*

*"Q.* What does that mean?

*"A.* This is the guaranteed job system whenever we need certain people to work, those people that hold that job title, as a result of bidding on it, will work that job and no one else can work that job.

"*Q.* Even though they have more seniority?

"*A.* There are different procedures to go through. There are cases where a higher-seniority person could bump the bid holder off the job, cases of shift preference only one that comes to my mind. If the higher-seniority person desires to move to a different shift, why she can bump somebody lower. There are several arrangements that can be made.

"*Q.* If Mrs. Hope is interested in work, you can give her work that will not require that she do frequent bending, twisting or lifting, and lifting of heavy objects?

"*A.* Yes.

"*Mr. Allison:* I have nothing further.

*Cross-Examination*

"*Q. [by plaintiff's attorney]:* What is the name of that job?

"*A.* Case rework, empty glass inspection.

"*Q.* You are saying case rework is light work?

"*A.* Yes.

"*Q.* In your opinion?

"*A.* Yes, sir.

"*Q.* How many times have you done it?

"*A.* None.

"*Q.* How tall are you?

\*   \*   \*

"*A.* Six foot five.

"*Q.* How much do you weigh?

"*A.* 150 pounds.

"*Q.* Have you done the label-inspection job?

"*A.* No, sir.

"*Q.* Is that the job you were talking about you would offer her?

"*A. I would be more easily able to assign her to case rework than glass inspection. On days I would assign her to empty glass inspection due to the problem of bid-job holding.*

"*Q.* In other words, you are telling me you are not wholly in control of what job you can offer?

"*Mr. Allison:* He can give the job on the days, that is being offered now.

*"Mr. Mitchell:* Let the witness answer.

*"A.* I offer the job * * *

*"The Referee* (interposing): Wait, he asked you the job. Go ahead.

*"A. In my opinion I believe it could be offered to her with certain arrangements being made.*

*"Q.* Such as—?

*"A. Meeting with the Union and permitting us to go outside the contract.*

*   *   *

*"Q.* What other jobs are available to her besides glass label inspection and case rework?

*"A.* I'd say unscrambler type work. It is a job title.

*"Q.* What is it?

*"A.* It is a job that you stand or sit at the end of the pasteurizer-cooler machine; jars come down, go in front of you on the conveyor line, and all you have to do is stand and tip the jar of jelly upon its bottom, make sure it is standing so it takes off on this conveyor, doesn't jam the jars.

*"Q.* Is that open to her?

*"A. I think it could be arranged.*

*"Q.* It is a bid job?

*"A.* Yes, sir."

(Emphasis added.)

In light of the above testimony, we hold that Mr. Martin did not make a specific firm offer of employment which would be within the means of the plaintiff to perform. The testimony discloses that arrangements with the union would have to be made prior to a suitable job being made available to plaintiff. Therefore, there was no evidence on the record to support the finding of fact made by the appeal board that plaintiff was not entitled to compensation benefits because she refused to accept an offer of employment which was in her capacity to perform.

The appeal board's decision is reversed.

All concurred.