MORRIS v GENERAL MOTORS CORPORATION

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—RIGHT TO BENEFITS—FAVORED WORK—REFUSAL TO PERFORM.

An employee's right to workmen's compensation benefits ends if he refuses to perform work provided by his employer which is "favored work", meeting the requirements of the employee's physical limitations.

2. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—FINDINGS OF FACT—CONCLUSIVENESS—STATUTES.

Findings of fact made by the workmen's compensation appeal board, in the absence of fraud, are conclusive, and such findings will not be disturbed if there is any evidence on the record to support the findings (MCLA 418.861).

3. EVIDENCE—MOTION PICTURES—ADMISSIBILITY.

Motion pictures may be admissible into evidence if it is established that they depict the subject matter in substantially the same conditions as existed at the time in question.

4. WORKMEN'S COMPENSATION—EVIDENCE—VIDEOTAPE—ADMISSIBILITY—DEPICTION OF CONDITIONS.

A videotape which was introduced in a workmen's compensation case solely to show the manner in which the task assigned to the injured employee could be performed and the location of the automobile tires involved in the job was properly admitted into evidence where the plaintiff failed to demonstrate that the videotape misrepresented the material facts.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 334 *et seq.*
[2] 58 Am Jur, Workmen's Compensation § 529.
[3] 29 Am Jur 2d, Evidence § 801.
  Use of motion pictures as evidence. 62 ALR2d 686.
[4–6] 58 Am Jur, Workmen's Compensation § 444 *et seq.*
[7] 58 Am Jur, Workmen's Compensation § 527.

5. APPEAL AND ERROR—WORKMEN'S COMPENSATION—EVIDENCE—PRE-
   SERVING QUESTION.

   A claim by a plaintiff in a workmen's compensation case that he
   was surprised by the introduction by the employer of a video-
   tape depicting the manner in which the plaintiff's job was
   performed must be rejected where the plaintiff made no claim
   of surprise at the hearing and made no attempt to depose the
   worker portrayed in the film to provide the appeal board with
   additional evidence (MCLA 418.859).

DISSENT BY O'HARA, J.

6. WORKMEN'S COMPENSATION—EVIDENCE—VIDEOTAPE—ADMISSIBILITY.

   *Admission into evidence of a videotape depicting an operation
   that an injured employee claimed he was unable to perform
   because of a knee injury, where the worker depicted in the
   videotape was healthy, uninjured, and with unimpaired func-
   tion of his knee, was impermissible.*

7. APPEAL AND ERROR—WORKMEN'S COMPENSATION—QUESTION OF
   FACT—QUESTION OF LAW.

   *Admissibility of reconstructed evidentiary matter in a workmen's
   compensation case is a question of law and the province of the
   Court of Appeals.*

Appeal from Workmen's Compensation Appeal
Board. Submitted Division 1 October 10, 1974, at
Detroit. (Docket No. 19058.) Decided January 8,
1975. Leave to appeal applied for.

Claim by Felix A. Morris against General Mo-
tors Corporation, Chevrolet Division Willow Run,
for workmen's compensation. Benefits denied.
Plaintiff appeals by leave granted. Affirmed.

*Glotta, Adelman & Dinges,* for plaintiff.

*Richard R. Norris,* for defendant.

Before: DANHOF, P. J., and BRONSON, and
O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

BRONSON, J. Plaintiff, Felix A. Morris, is here contesting an order of the Workmen's Compensation Appeal Board, which affirmed a hearing referee's finding that Morris "had not sustained his burden of proving a compensable disability * * * ".

Morris injured his right knee on August 30, 1968 while working on "road and roll" inspection at defendant-appellee General Motors' Willow Run plant. Surgery was required on two occasions in 1970 to repair the damaged knee. Morris returned to work on December 14, 1970. GM had voluntarily paid compensation for Morris' injury until that date.[1]

Upon returning to work for GM, Morris was assigned during the next several weeks to a series of varying tasks, because he was unable to engage in the bending and squatting required on the inspection job he had previously performed. The job Morris was finally given forms the basis of this dispute.

It is described as "engine and tire inspection" by Morris and "sixth pass, right-hand inspection" by GM. Basically, this job entails checking the engine compartment, grill, tires and wheels. Morris claims that proper performance of these duties required him to "squat to make sure they had the correct tire and wheel". GM refuted this claim in the Workmen's Compensation proceedings through the testimony of the general foreman, Norman

---

[1] The referee awarded compensation for various periods from September 6, 1968 through December 12, 1970 and granted credit for compensation previously paid by GM during those periods. That finding was affirmed by the appeal board and is not at issue here.

McGarry, and through the production of videotape pictures which purported to illustrate the inspection process.

Both the hearing referee and the appeal board concluded that Morris' final job could be capably performed by him, consistent with the recommendations of his treating physicians. Morris challenges this finding of fact.

There is no doubt that Morris is not disabled from doing all work. Medical witnesses called by him to testify agreed that he definitely could do work that did not involve squatting or knee bending. The question presented is whether the job provided by GM meets those requirements. If so, then it is "favored work", *Hope v Welch Grape Juice Co,* 46 Mich App 128; 207 NW2d 476 (1973), and Morris' refusal to perform it cuts off his right to workmen's compensation benefits. *Lynch v Briggs Manufacturing Co,* 329 Mich 168, 172; 45 NW2d 20 (1950); *Pulley v Detroit Engineering & Machine Co,* 1 Mich App 346, 351; 136 NW2d 762, 765 (1965); *Hope v Welch Grape Juice Co, supra,* at 129.

Morris testified that he was unable to perform the work because it required squatting to check the tire name and kicking the tires "to make sure there is air in them". McGarry disagreed, stating that proper performance of the inspection duties did not require squatting or kicking. He claimed that the tire name was visible without bending down and that proper tire inflation could be checked by striking the tires with a long-handled wrench, thus avoiding the kicking action which aggravated Morris' knee. This dispute presents a paradigmatic fact question to be determined in the first instance by the workmen's compensation officials.

Appellate review of findings of fact in such cases is severely limited. MCLA 418.861; MSA 17.237(861) provides, in part: "findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive". This provision has been interpreted to mean that board decisions on questions of fact will not be disturbed if there is any evidence on the record to support its findings. *Fergus v Chrysler Corp,* 45 Mich App 196, 199; 206 NW2d 521, 522 (1973), *rev'd on other grounds,* 389 Mich 811 (1973).

Both witnesses claimed familiarity with the job in question; Morris as one who performed it and McGarry as one who supervised such performance. There is no allegation of fraud here, and we are not prepared to say that there is an absence of competent evidence to support the board's conclusion. We re-emphasize that we are not at liberty to substitute our judgment for that of the board. The determination that Morris failed to prove his claim must stand.

Morris also maintains that the board's decision must be overturned for a different reason. The finding that Morris failed to show that he was entitled to further compensation was grounded in part on a videotape depicting a worker performing the duties Morris claims he cannot fulfill.

The taping was done on March 6, 1972 at about 8:00 p. m. on the second shift. A safety engineer for GM positioned himself on the assembly line and filmed about 5 to 10 minutes of the inspection process. The videotape was properly authenticated and Morris' attorney cross-examined the operator of the equipment.

Morris claims that the videotape "grossly misrepresented the material facts". He stresses that the worker shown was not Morris, but someone

else three inches shorter. He also suggests that such a brief film cannot adequately portray work done in a 40-hour week. Finally, he argues that he was taken by surprise by the use of the videotape and consequently had no opportunity to check its accuracy or question the workman portrayed in the tape.

McGarry testified that the videotape accurately reproduced the manner in which the job in question is customarily done. He also stated that various employees do not differ significantly in the way they perform the work.

The hearing referee admitted the film in order to determine whether the car tires were on the floor during the inspection. Morris had testified that the tires were on the floor, making it impossible to check them without squatting. The film showed that the tires were three or four inches off the ground as the cars came through on the conveyor belt.

In *Kaminski v Wayne County Road Commissioners*, 370 Mich 389; 121 NW2d 830 (1963), the Supreme Court held that in order for motion pictures to be admissible, it must be established that they depict the subject matter in substantially the same conditions as existed at the time in question.

We emphasize that the videotape in this case was not designed to reconstruct conditions prior to an accident, as in *Kaminski, supra*, or *Manning v Lake Superior & I R Co*, 4 Mich App 316; 144 NW2d 831 (1966). It was introduced solely as a demonstrative aid, to show the manner in which the task could be performed and the location of the tires. The identity of the workman in the film is not critical, given the testimony that he performed the job in the usual manner. Morris failed

to demonstrate that the three-inch height difference makes it substantially more likely that he is required to squat to adequately carry out the inspection. Though it is possible to vary the speed of the conveyor belt, there is no showing that its speed was altered to distort the accuracy of the film. Most importantly, Morris does not maintain that the height of the tires off the floor—that aspect of the film which the hearing referee purported to rely most heavily on—was misrepresented. Because the relevant conditions depicted in the videotape were substantially similar to those existing at the time Morris was performing the inspection illustrated by the tape, we conclude that the hearing referee did not err in admitting the videotape into evidence.

Morris' claim of surprise must also be rejected. He did not mention this problem at the hearing before the referee. Further, he made no attempt to depose the worker portrayed in the film in order to provide the appeal board with additional evidence pursuant to MCLA 418.859; MSA 17.237(859).[2] Having failed to take advantage of such opportunities below, he cannot be heard to complain on appeal.

The decision of the Workmen's Compensation Appeal Board is affirmed. No costs.

Affirmed.

DANHOF, P. J., concurred.

O'HARA, J. *(dissenting)*. I would reverse under the mandate of *Kaminski v Wayne County Road*

[2] "If a claim for review is filed, the board shall promptly review the order, together with the records of the hearing; it may hear the parties, together with such additional evidence as it in its discretion may allow them to submit and shall file its order with the records of the proceedings."

*Commissioners,* 370 Mich 389; 121 NW2d 830
(1963).

A videotape in which the involved operation is
depicted with a perfectly healthy uninjured em-
ployee of the defendant with unimpaired function
of his knee is a country mile away from the way
claimant testified he had to perform the work.

The determination of the credibility of witnesses
is the province, in the first instance, of the admin-
istrative law judge[1] and ultimately of the appeal
board.

Admissibility of reconstructed evidentiary mat-
ter is a question of law and our province.

I have absolutely no way of knowing the reason
for which the tape was "designed". All I know is
what it *did* do. Its admission was impermissible
and reversibly erroneous.

I would remand for a new hearing expressly
excluding the videotape, the admission of which
plaintiff objected to strenuously as having "grossly
misrepresented the material facts".

---

[1] Formerly "referee".