BOWER v WHITEHALL LEATHER COMPANY

Docket No. 64020. Argued November 13, 1980 (Calendar No. 5).—
Decided November 23, 1981.

Ferrell Bower claimed workers' compensation benefits against the
Whitehall Leather Company, his former employer, and the
Second Injury Fund. Bower suffered a series of injuries which
were work-related and made it physically impossible for him to
perform the labor which his job required. He and his wife
moved to Florida, where they both obtained employment. The
plaintiff's job was one which he could perform comfortably, at
slightly lower wages than those Whitehall had paid him. Dur-
ing the hearing on the claim, Whitehall offered him "favored
work" which was less strenuous than his old job at the same
salary he had been paid before. The plaintiff rejected the offer
because it would have required him to return to Michigan and
to do work which he was not sure he could do. The Workers'
Compensation Appeal Board decided that the plaintiff was
physically able to do the favored work but that he was not
disqualified for differential benefits because his refusal of the
offer was reasonable under all the circumstances. The Court of
Appeals, MacKenzie, P.J., and D. E. Holbrook, Jr., and Cynar,
JJ., reversed in a per curiam opinion on the ground that, as a
matter of law, the plaintiff's refusal to accept a good-faith offer
of favored work disqualified him from benefits (Docket No. 78-
5290). The plaintiff appeals. In an opinion by Justice Moody,
joined by Justices Kavanagh, Williams, Levin, and Fitzgerald,
the Supreme Court held:

The reasonableness of a refusal of an offer of favored work

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation §§ 349, 366.
Crediting employer or insurance carrier with earnings of employee
re-employed, or continued in employment, after injury. 84 ALR2d
1108.
[2] 22 Am Jur 2d, Damages § 200 et seq.
[3] 82 Am Jur 2d, Workmen's Compensation § 511.
[4-6, 9] 82 Am Jur 2d, Workmen's Compensation § 349.
[5, 10-12] 82 Am Jur 2d, Workmen's Compensation § 540 et seq.
[7, 8] 81 Am Jur 2d, Workmen's Compensation §§ 2, 28.

must be considered in determining whether a claimant is disqualified, and facts other than the claimant's physical ability to perform the work may be taken into account in assessing the reasonableness of the refusal.

1. Nothing in the Worker's Disability Compensation Act indicates that the Legislature intended to make a harsh and rigid rule of disqualification that an injured employee who rejects a good-faith offer of less strenuous work, which the employee is physically able to perform, is not entitled to workers' compensation benefits. The favored-work doctrine is a purely judicial creation. Its primary purpose is to permit the mitigation of an employer's liability for workers' compensation benefits, but it also serves a rehabilitative function by encouraging the employee to return to productive employment rather than remain idle.

2. The reasonableness of the refusal of favored work should be considered in deciding whether benefits should be forfeited because reasonableness is the basic principle underlying both purposes of the rule. The common-law doctrine of mitigation of damages does not operate against a recovery of full damages if the effort, risk, sacrifice, or expense which the person wronged must incur in order to minimize a loss or injury is such that under all the circumstances a reasonable man might well decline to incur it. The Worker's Disability Compensation Act specifically uses the reasonableness of a refusal to accept rehabilitation to determine the forfeiture of benefits on that ground.

3. The burden is on the employer to show that it offered the plaintiff work which he could perform. The Court has implicitly recognized that a claimant is under no obligation to comply with an unreasonable and arbitrary demand of an employer to accept whatever work the employer thought suitable in order to show cooperation. Further, forfeiture of benefits is a drastic remedy and the Court would not consider the application of such a harsh penalty without an assessment of the reasonableness of the employee's actions.

4. Application of the standard of reasonableness requires a court to examine the facts and circumstances in each case. Physical capacity to perform the offered work is not the only question in determining reasonableness of refusal, because other facts may also be relevant to important policies of the statute which should not be obstructed through a rigid application of the favored-work doctrine. The general rule has frequently been stated to be that an injured employee who refuses to accept favored work which the employee is capable of performing is not entitled to benefits. But in many cases the

rule is dictum, and a great majority of the cases which are cited in support of the rule, the interruption-of-work cases, are limited to their narrow factual circumstances that an employee who was performing favored work for his employer was unable to continue the work because of a supervening independent event. The basic rule that emerges from these cases is that a supervening event causing cessation of an employee's favored work will not terminate the right to benefits as long as the event is not under the employee's control or attributable to the employee. The critical factor justifying a denial of benefits is that the employee has willfully, through some choice of his own, left a job he could physically perform. In this case, however, the defendant employer wishes to force the employee to leave lighter work that he is capable of performing, although with another employer. Certainly, the same facts that justify the denial of benefits when the employee voluntarily leaves favored work should not force him to quit another job when he wishes to continue working; therefore, the analysis of the interruption-of-work cases should not be blindly transplanted to this case.

5. The Worker's Disability Compensation Act was designed to help relieve the social and economic difficulties faced by injured workers; as remedial legislation, it must be liberally construed to grant, rather than to deny, benefits. The purpose of the law is also to encourage the employee to rehabilitate himself because it is in the interests of the employer, the employee, and the public to have the employee return to gainful employment as soon as possible. The plaintiff in this case, acting in good faith, obtained suitable substitute employment six months before the defendant offered him a job. Bower did not leave Michigan to avoid work but, in part, to find it; such acts, showing initiative and industriousness, should be encouraged. To deny benefits in these circumstances would undercut the rehabilitative and mitigative purposes of the Worker's Disability Compensation Act, and would also discourage employers from taking the risk of hiring, and perhaps retraining, injured persons. Further, if the employer does not voluntarily pay workers' compensation, the employee may be without any means of support until an award of benefits is made by the referee at the hearing. The employer should not be able to claim the benefit of Bower's actions to reduce its liability for workers' compensation benefits, and then rely upon those actions to disqualify him when it offers him a job, nine months after he moved to Florida.

6. The Court cannot approve a blanket rule that would, by

the threat of forfeiture of benefits, give an employer the power to force an employee to return to Michigan. The physical upheaval, the economic and emotional costs of relocation, and the justifications for the refusal of an offer of favored work may· be different in each case. Not every personal consideration may excuse a refusal of favored work. Nor may an employee avoid returning to work tendered in good faith by merely removing himself from the locality of the employer. Only where the claimant's actions further the policies of the Worker's Disability Compensation Act can such a rejection be justified.

7. The Workers' Compensation Appeal Board applied the correct legal test of reasonableness in evaluating the plaintiff's refusal of the offer of favored work, and therefore its findings of fact are conclusive in the absence of fraud and cannot be disturbed if supported by competent evidence in the record. The Workers' Compensation Appeal Board found that the offer of work was within the plaintiff's physical capacity, and that the offer was timely made in good faith. It also found that, in the light of all the circumstances, Bower's refusal of the favored work was reasonable and did not require a forfeiture of benefits. Review of the record shows that the findings are amply supported.

The decision of the Court of Appeals is reversed and the case is remanded to the Workers' Compensation Appeal Board for further proceedings.

Chief Justice Coleman and Justice Ryan concurred in the result solely for the reasons stated in paragraph 7 above, but did not subscribe to the analysis in the rest of the opinion.

93 Mich App 257; 286 NW2d 877 (1979) reversed.

1. WORKERS' COMPENSATION — FAVORED WORK — PUBLIC POLICY.

The "favored work" doctrine is a purely judicial creation which permits the wages earned at less strenuous work after a work-related injury to be set off against workers' compensation benefits and thus mitigate the loss, and it also serves a rehabilitative function by encouraging the employee to return to productive work rather than to remain idle.

2. DAMAGES — MITIGATION — REASONABLENESS.

The common-law doctrine of mitigation of damages does not operate against a recovery of full damages if the effort, risk, sacrifice, or expense which the person wronged must incur in order to minimize a loss or injury is such that under all the circumstances a reasonable man might well decline to incur it.

3. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK — BURDEN OF PROOF.

The burden is on an employer asserting that an injured employee should be disqualified for workers' compensation benefits by his refusal of an offer of favored work to show that it offered the claimant favored work which the employee could perform.

4. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

Forfeiture of workers' compensation benefits for refusing an offer of favored work is a drastic remedy and cannot be applied without an assessment of the reasonableness of the employee's actions.

5. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

It may be reasonable for an injured employee claiming workers' compensation benefits to refuse an offer of favored work which the employee is physically able to perform; the factfinder must examine the facts and circumstances in each case which are relevant to the important policies of the Worker's Disability Compensation Act, rather than rigidly apply the favored work doctrine to disqualify the employee for workers' compensation benefits.

6. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

The critical factor justifying a denial of workers' compensation benefits because of an interruption of favored work by the injured employee is that the employee has willfully, through some choice of his own, left a job he could physically perform.

7. WORKERS' COMPENSATION — STATUTES — CONSTRUCTION — LEGISLATIVE PURPOSE.

The Worker's Disability Compensation Act was designed to help relieve the social and economic difficulties faced by injured workers; as remedial legislation, it is liberally construed to grant rather than to deny benefits (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

8. WORKERS' COMPENSATION — STATUTES — CONSTRUCTION — LEGISLATIVE PURPOSE.

The purpose of the Worker's Disability Compensation Act is not only to compensate the employee while he is incapacitated, but also to encourage him to rehabilitate himself; it is in the interest of the employer, the employee, and the public to have the employee return to gainful employment as soon as possible (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

9. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

An injured employee should not be disqualified for workers' compensation benefits where the employee, after his work-related injury, moved from Michigan to Florida and obtained other employment there which he could perform, and later refused an offer of favored work in Michigan, which was made six months later at the hearing on his claim; to deny benefits in such a case not only would be a harsh and unjust result but also would severely undercut the rehabilitative and mitigative purposes of the Worker's Disability Compensation Act.

10. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

An employer may not, by the threat of forfeiture of workers' compensation benefits, force an injured employee to accept an offer of favored work without an assessment by the Bureau of Workers' Compensation of the physical and emotional reasons for the employee's refusal of the offer; however, not every personal consideration or change of residence may excuse, under the policies of the Worker's Disability Compensation Act, a refusal of a good-faith offer of favored work which the employee is physically able to do.

11. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

The Workers' Compensation Appeal Board properly took into account the non-physical circumstances of a claimant's refusal of a good-faith offer of favored work which the employee was physically capable of performing where the employee, after his work-related injury, moved from Michigan to Florida and obtained other employment there, and then refused an offer of favored work in Michigan which was made six months later at the hearing on his claim.

12. WORKERS' COMPENSATION — DISQUALIFICATION — FAVORED WORK.

A decision by the Workers' Compensation Appeal Board that an injured employee's refusal of a good-faith offer of favored work, made by his former employer in Michigan, was reasonable and that it did not require a forfeiture of workers' compensation benefits is amply supported on the record where the claimant had moved to Florida after his injury, he actively sought and obtained other employment in Florida, the proceeds of which mitigate the workers' compensation benefits otherwise payable, his wife also obtained employment in Florida, and they had established a permanent new residence there more than nine months before his former employer offered him favored employment.

*McCroskey, Libner, Van Leuven, Feldman, Cochrane & Brock* for plaintiff.

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg*) for defendant Whitehall Leather Company.

Amicus Curiae:

*Miller, Cohen, Martens & Sugerman, P.C.* (by *Bruce A. Miller* and *Renate Klass; Jorden Rossen,* Associate General Counsel, of counsel), for International Union, United Automobile, Aerospace & Agricultural Implement Workers of America.

BLAIR MOODY, JR., J. The issue presented in this case is whether a partially disabled worker must forfeit all rights to workers' disability benefits because he will not leave a job in Florida to accept his former employer's offer of favored work when (1) he is physically able to perform the work; (2) the employer did not offer the work until the day of the hearing on the disability claim, nearly one year after the submission of that claim; and (3) the worker, in the meantime, had moved his family to Florida and accepted substitute lighter work there, the wages of which are credited against the employer's liability for compensation.

Consistent with the policy of both the Worker's Disability Compensation Act and the judicially created favored-work doctrine to encourage disabled workers to seek jobs within their physical capabilities rather than remain idle, we hold that the worker in these circumstances may refuse the proffered employment without forfeiting his workers' disability benefits. In reaching our decision, we find that the good faith or reasonableness of a worker's actions must be taken into account in

determining whether the forfeiture penalty should be imposed, and, further, that factors other than those relating to the physical capacity to perform favored work may be considered in assessing the reasonableness of the refusal. Accordingly, we reverse the decision of the Court of Appeals and reinstate the WCAB award of continuing benefits to plaintiff.

I

Plaintiff Ferrell Bower, a long-time supervisory employee at defendant Whitehall Leather Company, suffered a non-work-related injury to his left knee in April, 1970. After surgery, he was able to return to his work as a foreman and leather sorter without physical difficulty.

It is undisputed that the fact that Mr. Bower was a conscientious, hard-working employee, who did not want to shift his work onto others, helped contribute to a series of subsequent injuries.

In February, 1971, a wagon tongue fell apart as plaintiff was pulling it, and he fell, reinjuring his left knee. A few days later he suffered further injury to the same knee when he fell off the side of a steel mat. As a result, he was forced to undergo additional surgery on the knee in April, 1971.

Mr. Bower returned to his job, but once again, in April, 1973, he fell and reinjured the knee, this time after stepping on a ball bearing. The knee became progressively worse, and in the fall of 1973, plaintiff took a three-month paid leave of absence and went to Florida, where he was given swimming exercises and other physical therapy.

By December, 1973, Mr. Bower's knee had improved sufficiently to enable him to return to work at Whitehall Leather. However, as a result of a

strike in the summer of 1974, management employees such as plaintiff were forced to perform regular labor. The additional work, both parties agree, was beyond Mr. Bower's physical capacity, and on July 19, 1974, feeling he "just couldn't take it any more", he finally left his job at Whitehall.

Mr. Bower and his wife then moved to Florida, where both sought and found work. Initially, plaintiff took a job as a security guard for a golf club. Then, in November, 1974, he found more permanent employment as an internal detective for a department store. Though his wages were somewhat less than his earnings at Whitehall, he could perform the job comfortably in spite of his physical limitations.

Subsequently, during the course of the hearing on Bower's disability claim, more than nine months after Bower left Whitehall, defendant offered plaintiff favored work at a salary equal to that he had previously earned at Whitehall. According to the employer, this offer was made in good faith and at the first opportunity; Whitehall was not able to obtain medical testimony indicating that Bower was capable of performing lighter work until three weeks before the trial.

Acceptance would have required Bower to quit his Florida job and return to Michigan to work he was not sure he could physically perform. Therefore, he rejected Whitehall's offer.

The administrative law judge awarded continuing differential benefits to plaintiff based on the injuries incurred during the course of his employment at Whitehall. Bower's Florida wages were credited against Whitehall's compensation liability.[1]

A unanimous Workers' Compensation Appeal

---

[1] MCL 418.351; MSA 17.237(351); MCL 418.371; MSA 17.237(371).

Board (WCAB) affirmed. *Bower v Whitehall Leather Co,* 1977 WCABO 3920. The WCAB found that although plaintiff remained disabled from general common labor, he was physically able to perform the favored work offered by defendant. It found further that Whitehall's offer was made in good faith. Nevertheless, the board held that Bower's refusal of the proffered employment did not result in a forfeiture of benefits because his refusal was reasonable under all the circumstances.

Defendant's application for leave to appeal was denied by the Court of Appeals. Whitehall appealed to this Court, and we remanded the case to the Court of Appeals for consideration as on leave granted. 403 Mich 844 (1978).

In a published per curiam opinion, the Court of Appeals reversed the WCAB. *Bower v Whitehall Leather Co,* 93 Mich App 257; 286 NW2d 877 (1979). It held that Bower's refusal to accept the good-faith offer of favored work within his physical capabilities terminated his right to disability benefits.

This Court granted leave to appeal. 408 Mich 930 (1980).

## II

Defendant Whitehall Leather contends, and the Court of Appeals agrees that, as a matter of law, an injured employee who rejects a good-faith offer of favored work that the employee is physically capable of performing is not entitled to disability benefits. Whitehall argues further that the WCAB erred in including the factor of the reasonableness of the refusal as part of the standard used to determine whether Bower must forfeit his benefits. However, nothing in the Worker's Disability Com-

pensation Act indicates that the Legislature intended such a rule, and we decline to judicially adopt this harsh and rigid view of employees' rights and obligations.

The favored-work doctrine is a purely judicial creation. Favored, or light, work can be loosely defined as less strenuous post-injury work. Wages from favored work may be used as a setoff against an employer's compensation liability, MCL 418.361(1); MSA 17.237(361)(1), but favored-work wages do not establish an earning capacity, and when such wages cease, they neither suspend nor bar compensation. *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979).

The primary purpose of the doctrine is that of mitigation. It allows an employer to reduce or completely eliminate compensation payments by providing work within the injured employee's physical capacity. At the same time, it encourages the employee to return to productive employment rather than to remain idle, thus also serving a rehabilitative function. *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966).

To hold that the reasonableness of an employee's action in refusing favored work cannot be considered in determining whether benefits should be forfeited would be to contradict the basic principle underlying both these purposes. The common-law doctrine of mitigation is founded upon notions of reasonableness:

"If the effort, risk, sacrifice, or expense which the person wronged must incur in order to avoid or minimize a loss or injury is such that under all the circumstances a *reasonable* man might well decline to incur it, a failure to do so imposes no disability against recovering full damages." McCormick, Damages, § 35, p 133.

Further, in the area of rehabilitation, the Worker's Disability Compensation Act itself specifically incorporates the factor of reasonableness in judging forfeiture:

"If there is an *unjustifiable* refusal to accept rehabilitation pursuant to a decision of the director, the director shall order a loss or reduction of compensation in an amount determined by the director for each week of the period of refusal." MCL 418.319(1); MSA 17.237(319)(1). (Emphasis added.)

While it has not before confronted the issue directly, this Court has implicitly recognized that the favored-work doctrine must be tempered with reasonableness. In a major favored-work case, *Kolenko v United States Rubber Products, Inc*, 285 Mich 159; 280 NW 148 (1938), the employer refused to describe the nature of the proffered work before demanding that the employee accept it. Rejecting defendant's argument that refusal of the favored work in these circumstances should result in forfeiture of benefits, the Court stated:

"The burden was on the defendant to show that it offered plaintiff work which she could perform. * * * Plaintiff was under no obligation to comply with the unreasonable and arbitrary demand of defendant that she accept whatever work the company thought suitable for her. *Plaintiff in her attitude and conduct with regard to the proposed job clearly appears to have been actuated by good faith.* The law does not compel her to submit to the capricious dictates of an employer with regard to the kind of work she must accept in order to show cooperation. The only lack of cooperation that appears from the record in this case is on the part of

defendant." *Kolenko,* 162.[2] (Emphasis added.)

Finally, even without prior explicit recognition by this Court, we should not ignore the standard of reasonableness. Forfeiture is a drastic remedy. If the statute specifically requires that reasonableness not be taken into account, the courts must obey, no matter how unjust the result. But in the instant case, the doctrine to be applied, even though developed in a statutory context, is a judicially created one. Therefore, consistent with our approach to the common law, we refuse to consider application of the harsh forfeiture penalty without an assessment of the parties' reasonableness.

This approach is also consistent with decisions based upon other portions of the Worker's Disability Compensation Act which involve potential forfeiture of benefits. For example, a claimant does not lose his right to compensation if he reasonably refuses to submit to corrective surgery, *Dyer v General Motors Corp,* 318 Mich 216; 27 NW2d 533 (1947); or if he reasonably refuses to follow recommended exercise, *Brown v Premier Manufacturing Co,* 77 Mich App 573; 259 NW2d 143 (1977).[3] In

---

[2] See also *Ayoub v Ford Motor Co,* 101 Mich App 740; 300 NW2d 508 (1980), where the Court determined that claimant did not act in good faith in abandoning favored work, and *Christiansen v Eaton, Yale & Towne, Inc,* 89 Mich App 440; 280 NW2d 463 (1978), where the Court held that plaintiff, who refused favored work based solely on his opinion that there were absolutely no jobs in the employer's plant that he could physically perform, acted in bad faith. In *Christiansen,* the Court of Appeals indicated that plaintiff, who, unlike Mr. Bower, was not working at the time, should have at least examined the jobs offered.

[3] "It is important to note that the department found: 'The proposed surgery was in the nature of an *exploratory* operation.' There is no showing in the record that the proffered operation was not one fraught with danger to plaintiff's life or health, or that he might not incur extraordinary suffering in consequence thereof. Nor was plaintiff assured that the tendered operation offered a reasonable prospect of relieving or correcting his incapacity. Instead the operation was, as

other states, where an employee may forfeit or suffer a reduction in benefits if he does not seek substitute employment to mitigate the employer's damages, his search for work within his physical capacity is required only to be reasonable. *Becker v General Electric Co,* 210 App Div 495; 206 NYS 437 (1924); *Thompson v Wells-Lamont Corp,* 362 So 2d 638 (Miss, 1978); *Schnatzmeyer v Industrial Comm,* 77 Ariz 266; 270 P2d 794 (1954).

Additionally, specifically in the favored-work situation, the validity of the employer's work offer is judged in terms of good faith or reasonableness. *Kolenko.*

Therefore, to determine whether an employee forfeits workers' compensation benefits for refusing a good-faith offer of favored employment, the reasonableness of the employee's actions in so refusing must be considered.

## III

Application of a reasonableness standard requires a court to examine the facts and circumstances in each case. Defendant Whitehall argues that even if a claimant's actions must be evaluated in terms of reasonableness, as a matter of law it is never reasonable to refuse favored work the employee is physically able to perform; in other words, the court may consider only facts and circumstances relating to physical capability. We

the department found, purely exploratory. Its purpose was not remedial, but instead by it, defendant hoped to discover the cause of plaintiff's incapacity. Plaintiff's refusal under the circumstances to submit to the operation did not constitute a reason or ground for denying compensation." *Dyer,* 220-221.

"We * * * hold that the correct standards to apply to this question of the reasonableness of a failure to follow recommended exercise, are: (1) the pain necessarily produced, (2) the claimant's age, and (3) the probability of benefit from the course of treatment." *Brown,* 579.

disagree. The facts of the instant case especially illustrate that non-physical factors may also be relevant to important policies of the statute which should not be discouraged through a rigid application of the favored-work doctrine.[4]

It is true that Michigan appellate courts have stated by rote the general rule regarding forfeiture of benefits because of refusal to perform favored work in absolute terms:

"An injured employee who refuses to accept an offer of employment for 'favored work', which said employee is capable of performing, is not entitled to workmen's compensation benefits." *Hope v Welch Grape Juice Co*, 46 Mich App 128, 129; 207 NW2d 476 (1973), citing *Lynch v Briggs Manufacturing Co*, 329 Mich 168; 45 NW2d 20 (1950).[5]

By "capable of performing", the courts mean physically capable. *Lynch.* This Court has also stated that "[i]t is the duty of a disabled employee to cooperate * * * by accepting tendered favored employment which he is physically able to perform". *Todd v Hudson Motor Car Co*, 328 Mich 283, 289; 43 NW2d 854 (1950).

In many cases, however, the rule cited is obiter dictum; either the employer did not adequately comply with the requirement that it offer employment; *i.e.*, the favored-work offer was not specific or firm, *Hope*,[6] or the employer did not satisfy its

---

[4] Of course, nothing in this opinion should be construed as altering or modifying the rule that an employee who refuses an offer of favored work that he is *not* physically capable of performing does not forfeit compensation benefits.

[5] See also, *e.g., Pulley v Detroit Engineering & Machine Co*, 378 Mich 418; 145 NW2d 40 (1966); *Pigue v General Motors Corp*, 317 Mich 311; 26 NW2d 900 (1947).

[6] In *Hope*, the contract required the employer to obtain the union's approval before it could tailor lighter work to an injured worker's capability. The employer did not make the necessary arrangements

burden of proving that it offered work the employee could physically perform, *Kolenko,* or the circumstances indicated that, in fact, the claimant was not able to perform the proffered work. *Powell.*[7]

Further, a great majority of the cases cited in support of the general rule, including *Pigue v General Motors Corp,* 317 Mich 311; 26 NW2d 900 (1947), upon which the Court of Appeals relied in the instant case, are limited by narrow factual circumstances which differ from the situation presented in the instant case. In *Pigue* and related cases, the employee was already performing favored work for his original employer and a supervening independent event rendered him unable to continue. Under such circumstances, the issue presented is whether the occurrence of the particular non-work-related factor, which interrupts the performance of favored work, affects the employee's right to compensation for a prior injury.

To determine whether benefits should be awarded in the context of the special facts of these interruption-of-work cases, Michigan courts developed a corollary to the physically capable rule. The basic rule of law that emerges from these cases is that a supervening event causing cessation of an employee's favored work will not terminate his right to benefits as long as the event is not under the employee's control or attributable to him.

---

with the union before offering claimant favored employment. The Court held, therefore, that no specific, firm offer had been made.

[7] In *Powell,* one of the more recent cases to cite the rule, this Court noted:

"The result [grant of compensation] *can* be different, of course, in a case in which a plaintiff is physically able to perform favored work and has refused." 406 Mich 332, 354, fn 10. (Emphasis added.)

The careful use of the word "can" rather than "must" should be emphasized. See also *Frammolino v Richmond Products Co,* 79 Mich App 18; 260 NW2d 908 (1977).

Thus, interruptions of work caused by voluntary actions of the employee, such as abandonment of work to participate in a strike, *Pigue,* failure to return without explanation at the end of a leave of absence, *Pulley v Detroit Engineering & Machine Co,* 378 Mich 418; 145 NW2d 40 (1966), failure to notify the employer of medical restrictions, *Ayoub v Ford Motor Co,* 101 Mich App 740; 300 NW2d 508 (1980), or discharge because of gambling, *Todd,* or drunkenness, *Garrett v Chrysler Corp,* 337 Mich 192; 59 NW2d 259 (1953), results in a forfeiture of benefits.

On the other hand, stoppage of favored work due to events the employee cannot control, such as being struck by an automobile, *Lynch,* mandatory retirement, *Evans v United States Rubber Co,* 379 Mich 457; 152 NW2d 641 (1967), or non-work-related health problems, *e.g.,* insanity, *Ward v Heth Brothers,* 212 Mich 180; 180 NW 245 (1920); leprosy, *Sotomayor v Ford Motor Co,* 300 Mich 107; 1 NW2d 472 (1942), or cancer, *Powell,* does not defeat compensation.[8]

---

[8] In an apparent exception to the rule, our Court in *Dunavant v General Motors Corp,* 325 Mich 482; 38 NW2d 912 (1949), held that plaintiff, already receiving compensation for a hand injury, was not entitled to an increase in benefits when he contracted tuberculosis and was unable to perform favored work. *Dunavant* was effectively overruled in *Powell v Casco Nelmor Corp,* 406 Mich 332, 354, fn 11; 279 NW2d 769 (1979).

However, although the general rule in interruption-of-work cases is stated in absolute terms, a number of exceptions should be noted. Unlike *Dunavant,* these exceptions have not been overruled.

In several cases the courts have granted benefits where the interruption of favored work was, at least arguably, brought about by some voluntary act of the employee. In *Neagle v State Library,* 6 Mich App 148; 148 NW2d 507 (1967), the Court of Appeals upheld an award of benefits to an employee who was discharged from favored employment because of misconduct, specifically for taking long coffee breaks and having the odor of alcohol on his breath. The Court affirmed the decision of the appeal board, which had found that the employer had condoned the worker's behavior for many years and, more importantly, that the claimant's conduct was not so egregious as to require forfeiture of benefits. Similarly, though it reserved judg-

Defendant Whitehall argues that we should apply the rule of these cases to the instant situation. Therefore, since the WCAB found that Mr. Bower was physically capable of performing the proffered work, and since his voluntary and discretionary act in leaving the state and moving to Florida was the effective cause of his inability to accept the work, he should return to Michigan and work for Whitehall or forfeit his right to compensation.

However, an analysis of the interruption-of-work cases illustrates why it would be completely inappropriate to apply that rule to the instant case. The reason goes beyond the difference between quitting a job, leaving one's employer unprepared and unequipped, and declining to take the job in the first place, although this is a threshold factor to consider. The difference between the circumstances involved in cases such as *Pigue* and the instant situation directly implicates the stable employment policy that lies at the core of not only

ment on the question whether dismissal for reasons less than moral turpitude or illegality relieves an employer of its compensation liability, another Court of Appeals panel, in *Tury v General Motors Corp,* 80 Mich App 379; 264 NW2d 2 (1978), upheld an award of compensation for an employee discharged from lighter work for making a false statement about a co-worker. But see *Scott v Kalamazoo College,* 77 Mich App 194; 258 NW2d 191 (1977).

In *Dyer v General Motors Corp,* 318 Mich 216; 27 NW2d 533 (1947), this Court upheld claimant's right to continuing benefits even though he was discharged, as required by contract, for failure to pay union dues. The Court, however, based its decision on the fact that even while performing favored work, plaintiff had been. receiving the maximum statutory benefits for his disability. Therefore, the employer was not prejudiced by the continuation of benefits after the termination of Dyer's employment.

In *PPG Industries, Inc v Aites,* 7 Pa Commw Ct 588; 300 A2d 902 (1973), claimant quit favored work to become a minister. When he later found he could not earn a living wage at that profession, he attempted to find additional lighter work. The Court held that by leaving favored employment, he did not forever waive his right to compensation. Once he attempted to secure additional employment other than as a minister, he again became eligible to receive benefits when his old favored position was no longer available.

our social welfare programs, but also our entire economic system.

In the interruption-of-work cases, the critical factor justifying the denial of benefits is that the employee has willfully, through some choice of his own, left a job he could physically perform. Yet in the instant case, defendant employer wishes to force the employee to do just that, *i.e.,* leave lighter work, albeit with another employer, that the employee is capable of performing. In other words, Whitehall asks us to punish Mr. Bower, by means of a forfeiture of benefits, for refusing to do exactly what is condemned in the interruption-of-work cases.

With this distinction in mind, the analysis developed in the *Pigue* line of cases should not be blindly transplanted to the instant case. Certainly the same factors that justify the denial of benefits when the employee voluntarily leaves work should not force him to quit when he wishes to continue working.

Only in a very few cases has any Michigan court, and never this Court, directly faced the relevance of physical capability and denied benefits because an employee refused to accept favored employment that he was able to perform. For example, in *Christiansen v Eaton, Yale & Towne, Inc,* 89 Mich App 440; 280 NW2d 463 (1978), the claimant refused to attempt the proffered employment because he felt it was beyond his physical capabilities. The WCAB found that the job appeared to be within his capacity and terminated compensation, and the Court of Appeals affirmed.[9]

___

[9] See *Morris v General Motors Corp,* 57 Mich App 534; 226 NW2d 554 (1975), where the Court of Appeals refused to overturn the WCAB finding that the claimant could physically perform the proffered employment and held, therefore, that his rejection of the work offer terminated his right to benefits. This Court reversed on an eviden-

But again, the instant case differs in a significant manner, in that Mr. Bower, acting in good faith during the long interval before Whitehall finally offered favored work, obtained suitable substitute employment on his own. This difference becomes critical when viewed in the light of the overriding policies and purposes of the Worker's Disability Compensation Act.

## IV

The Worker's Disability Compensation Act was designed to help relieve the social and economic difficulties faced by injured workers. As remedial legislation, it is liberally construed to grant rather than deny benefits. *Niekro v The Brick Tavern,* 66 Mich App 53; 238 NW2d 537 (1975). See *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977).

However, as also reflected in the favored-work doctrine, the act is not designed merely to require compensation:

"The purpose of the law is not only to compensate the employee while he is incapacitated, but also to encourage him to rehabilitate himself. * * * It is in the interest of the employer, the employee, and the public to have the employee return to gainful employment as soon as possible." *DeTroyer v Ernst Kern Co,* 282 Mich 689, 694; 277 NW 199 (1937).

It is difficult to imagine how this spirit of the

tiary issue, and remanded to the WCAB for further proceedings. *Morris v General Motors Corp,* 394 Mich 453; 231 NW2d 646 (1975).

See also *McKinney v Uniroyal, Inc,* 82 Mich App 348; 266 NW2d 820 (1978), and *Brown v Premier Manufacturing Co,* 77 Mich App 573; 259 NW2d 143 (1977), where the Court of Appeals did not deny benefits, but stated the general rule and remanded for a finding of whether claimant was physically capable of performing the proffered work.

law could have been reflected any better than it was in Mr. Bower's actions. He did not use his disability as an excuse to remain idle. As evidenced by the fact that he was already working some six months before Whitehall offered him a job, he did not leave his locality to avoid work, but rather, in part, to find it. By exercising his initiative and obtaining substitute work, he rehabilitated himself to become a productive member of society. Further, by working, he benefited not only himself and society, but also his employer; his wages may be set off against Whitehall's compensation liability, thus mitigating the employer's damages.

Such acts, showing initiative and industriousness, should be encouraged. To deny benefits in the instant circumstances not only would punish this employee for finding and holding substitute work, but also would severely undercut the rehabilitative and mitigative purposes of the act. Denial would encourage an injured worker to stagnate, awaiting the possibility that the original employer might offer a job sometime in the future. Certainly the employee would hesitate to seek or accept a job in another city, when he or she could be faced with the no-win choice of incurring the expense and emotional upheaval of returning[10] or suffering a cutoff of benefits.

Denial would also discourage employers from hiring disabled workers. Few employers would be willing to take the risk of employing, and perhaps retraining, injured persons, only to have them forced to quit when called upon by the former

---

[10] At the hearing on the instant claim, a Whitehall representative stated that he did not know whether the employer would pay the costs of Mr. and Mrs. Bower's relocation and transportation back to Michigan.

employer.[11] Just as injured workers should not be penalized for their attempts at rehabilitation, employers who hire them should not be punished for their part in making that rehabilitation possible.[12]

Further, it is important to recognize that if the employer does not pay compensation voluntarily, the employee may be without any means of support until an award of benefits is made by the referee at the hearing. In the instant case, the hearing did not take place until nine months after the claim was filed, regrettably only a short time in the life of a court proceeding, but a long time in the economic existence of an individual. Yet the threat of denial of benefits would discourage the worker from seeking, and another employer from offering, a substitute job the claimant may need to survive. .

Similarly, the employer cannot have it both ways. Whitehall cannot claim the benefit of Mr. Bower's actions in reducing its compensation liability, yet later rely on those actions to deny compensation when it offers him a job, some nine months after the employee moved to Florida.[13]

---

[11] Because of this consequence, we would be reluctant to deny benefits even if claimant did not have to assume relocation costs to accept his original employer's offer, *i.e.,* where he found another job in the same city or where the former employer is willing to cover the relocation costs.

[12] Whitehall contends that this Court should "favor the employer who makes his best effort to provide meaningful productive employment to a disabled worker". But defendant fails to acknowledge that the rule it advocates would accomplish the opposite result in that it would penalize the department store in Florida, the employer who did, in fact, timely "provide meaningful productive employment to a disabled worker".

[13] The employer argues that granting benefits to Mr. Bower will encourage other employees to relocate in order to avoid working while continuing to receive benefits. The record indicates that this was not the motive in the instant case. Further, relocation, with its attendant financial and emotional costs, is an extreme measure and we do not believe that many workers would resort to this tactic simply to avoid work. The rare employee who does so likely would be

We hesitate to approve a blanket rule that would give an employer the power to force an employee, using the threat of forfeiture of benefits, to return to Michigan in these particular circumstances. The physical upheaval and the emotional costs of relocation may be different in each case, as may the justifications for the refusal of an offer of favored work. We do not believe that an employer should be able to exert such control over an individual without an assessment of the unique factors in each case.

Therefore, application of an absolute rule that an employee must accept favored work which he is physically capable of performing or forfeit benefits would lead to a harsh and unjust result in the instant case. We decline to ratify such a rule and hold that the Court of Appeals erred in applying it below. Confronted by Mr. Bower's exemplary rehabilitative and mitigative actions during the lengthy interim, we also hold that in certain circumstances the WCAB may take non-physical factors into account in determining the reasonableness of the employee's refusal of a good-faith offer of favored work. We conclude that the WCAB properly did so in this case.

Faced with a situation which was factually closer to the instant case than were any of the controversies presented to Michigan courts,[14] the

_____

found to have acted in bad faith by the WCAB and will thus forfeit benefits in any event.

[14] In *Frammolino v Richmond Products Co,* 79 Mich App 18; 260 NW2d 908 (1977), the Court of Appeals faced, but did not decide a similar issue. Claimant, finding herself allergic to the fiberglass products produced by her employer, sought job training through the Michigan Department of Education. Through the department, she enrolled in a two-year program in college. Her studies, and her acceptance of a part-time job, precluded her acceptance of a job offer by her former employer.

The WCAB found that the job offered was not within plaintiff's physical limitations. It also held that even if the proffered employ-

Minnesota Supreme Court reached a similar con-
clusion. In *Morrison v Merrick's Super Market,
Inc,* 300 Minn 535; 220 NW2d 344 (1974), the
employee refused an offer of favored work made
while he was engaged in a retraining program.
The Court held that the employee's refusal was
justified and, noting that its decision was consis-
tent with the remedial nature of the act and the
more specific statutory purpose of "encouraging
injured workers to increase their employability

ment had been within her physical capabilities, her refusal was
justified since she was following a course of rehabilitation recom-
mended by the Department of Education. Partial disability benefits
were awarded.

The Court of Appeals found the WCAB determination of physical
incapacity controlling. However, it remanded on the issue of the
amount of compensation granted, holding that claimant's reduction in
availability for employment due to her studies could not be taken into
account in determining wage-earning capacity unless her former
employer was financially responsible for such retraining. The Court
did not address the issue of whether plaintiff's pursuit of a course of
study could justify her refusal of favored work she could physically
perform.

The Workers' Compensation Appeal Board has awarded benefits in
a number of cases which are factually similar to the instant one. See
*Wilson v General Motors Corp,* 1976 WCABO 4573, where the injured
claimant lost his home in Michigan and moved to Pennsylvania
where he could obtain housing for himself and his family at substan-
tially lower cost. The WCAB held that he did not forfeit his right to
compensation when he refused to uproot his family and return to
Michigan to accept favored work subsequently offered by his em-
ployer.

See also *Rae v Dow Chemical Co,* 1975 WCABO 1088, where
claimant refused an offer of favored work made not only one day after
the compensation hearing but also just as the employee, pursuant to a
long-standing plan of rehabilitation, was about to begin classes at
Lansing Community College. The WCAB found the refusal reasonable
in these circumstances.

In a case similar to the instant one in the sense that non-physical
factors were considered, the WCAB found that plaintiff was justified
in rejecting favored work that would have required him to work on
Saturday, contrary to his religious beliefs. *Marsh v Kalamazoo,* 1974
WCABO 3786.

Apparently none of these cases have reached the appellate courts in
Michigan.

through retraining", upheld an award of compensation.[15]

It should be recognized that we do not hold that just any personal consideration may excuse a refusal of favored work. Nor may an employee avoid returning to work tendered upon a good-faith offer by merely removing himself from the locality of the employer. Only under circumstances similar to those in the instant case, where the claimant's actions further the policies of the statute, can such a rejection be justified.[16]

---

[15] Referring to the decision in a subsequent opinion, the Minnesota Supreme Court explained that, in effect, the retraining course rendered the employee unavailable for the work offered by the employer. Thus, there existed no justification for denying compensation. *Adams v Nadave,* 309 Minn 536; 245 NW2d 227 (1976).

[16] Our decision in this case is consistent with this Court's interpretation of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.;* MSA 17.501 *et seq.*

In *Bingham v American Screw Products Co,* 398 Mich 546; 248 NW2d 537 (1976), we held that claimant, who left his job and moved to Kentucky because he could not find housing in Michigan that he and his family could afford, was not disqualified from receiving unemployment compensation when he rejected his employer's subsequent offer to return to Michigan to his former job. Under the statute, a worker loses his right to compensation if he refuses an offer of suitable work without good cause. MCL 421.29(1)(e); MSA 17.531(1)(e). We concluded that Bingham had "good cause" to reject the proffered employment because, in view of the unreasonable distance between his home in Kentucky and the job in Michigan, the offer did not constitute an offer of "suitable work". Thus, in that context we also declined to use the threat of forfeiture of benefits to force the claimant to return to Michigan to work, finding that, under certain circumstances, a refusal may be reasonable or with good cause.

Admittedly, the language of the MESA arguably dictates the *Bingham* result. The statute specifically provides that distance of the proffered employment from the claimant's residence is a factor to be considered in determining the suitability of the work. MCL 421.29(6); MSA 17.531(6).

However, the absence of such statutory language in the Worker's Disability Compensation Act (WDCA) does not preclude the application of the principles underlying *Bingham* and other decisions contruing the MESA to the instant case. Though directed at different social and economic evils, the WDCA and the MESA embody a similar remedial spirit and advance the same rehabilitative and mitigative purposes. Further, even in interpreting the MESA, we have not regarded the non-existence of statutory language as compelling a

## V

Since we have determined that the Workers' Compensation Appeal Board applied the correct legal test in concluding that (1) whether a claimant's refusal of an offer of work terminates his right to benefits must be evaluated in terms of reasonableness and (2) factors other than a claimant's physical ability to perform the work may be taken into account in assessing the reasonableness of the refusal, our function as a reviewing court is extremely limited. The findings of fact of the WCAB are conclusive in the absence of fraud and will not be disturbed if supported by competent evidence in the record. *Pigue, supra;* MCL 418.861; MSA 17.237(861).

In the instant case, the WCAB found that the offered work was within plaintiff's physical capacity, and that the offer was timely made and in

result. For example, we have approved a definition of good cause which incorporates personal considerations not specified in the act itself. See *Dueweke v Morang Drive Greenhouses, Inc,* 411 Mich 670; 311 NW2d 712 (1981), adopting the rationale and standard of good cause described in the dissenting opinion of Judge LEVIN in *Keith v Chrysler Corp,* 41 Mich App 708, 709; 200 NW2d 764 (1972). *Keith* had been affirmed by an equally divided Court. 390 Mich 458; 213 NW2d 147 (1973).

A respected commentator has also noted the similarity in analysis between refusal of proffered work in unemployment compensation and workers' compensation cases:

"Whenever claimant's case depends in part on a showing that he was unable to get work because of his physical condition, it naturally follows that, as in unemployment compensation cases, the employer may defend on the ground that claimant has refused suitable work. While there are not as many workmen's compensation cases on this issue, they seem to resemble in general effect the more numerous unemployment cases on the same point.

\* \* \*

"Of course, there is no [denial of benefits] if the refusal is based on reasonable grounds." 2 Larson, Workmen's Compensation Law, § 57.66, pp 10-161—10-162.

good faith.[17] Finally, a unanimous WCAB found that, in light of all the circumstances, Mr. Bower's refusal of the offered work was reasonable and did not require a forfeiture of benefits:

"He is not simply absenting himself from the state and asking that a check be mailed to him weekly. He actively sought and obtained other employment, the proceeds of which act to mitigate the otherwise payable compensation due from defendant. His wife is also employed, and obviously a permanent new residency has been established. Instead of asserting a right to offer plaintiff a job back in Michigan at favored work (and plaintiff's testimony asserts some qualms regarding such work clouding his counsel's concession of ability), defendant should be grateful that a one-time good supervisory employee is acting as it might have expected he would—working long hours to minimize its loss. His refusal of the offered work was reasonable."[18]

Our review of the record reveals that these findings are amply supported.

Accordingly, we reverse the Court of Appeals decision denying claimant's request for workers' disability benefits, and reinstate the appeal board's award of compensation on a continuing basis. We remand this case to the board for proceedings not inconsistent with this opinion.

KAVANAGH, WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with BLAIR MOODY, JR., J.

[17] We strongly disapprove of late offers such as this one, even if they are made in good faith, because of the insecurity they may create in a claimant's life. Instead of deciding in the instant case that plaintiff's refusal was reasonable, the same result could be reached by determining that the delay in the offer made it an unreasonable one. Because the WCAB's finding of good faith is supported by the record, we do not so hold.

[18] The author of the opinion, Chairman Gillman, found the instant case a particularly compelling one for an award of benefits. His conclusions are noteworthy in view of the fact that he disagreed with a grant of compensation in a factually similar case. See *Wilson v General Motors Corp, supra,* discussed in footnote 14.

COLEMAN, C.J., and RYAN, J. We concur in the result the Court has reached solely for the reasons stated in Part V of Justice MOODY's opinion. We do not subscribe, however, to the analysis in Parts II, III, and IV.